385 So.2d 426 (1980)
AAA TIRE & EXPORT, INC.
v.
BIG CHIEF TRUCK LINES, INC.
No. 13311.
Court of Appeal of Louisiana, First Circuit.
May 5, 1980.
*427 Michael R. Connelly, Baton Rouge, for plaintiff-appellant AAA Tire and Export, Inc.
Larry M. Roedel, New Orleans, for defendant-appellee Big Chief Truck Lines, Inc.
Joseph R. Raggio, Baton Rouge, for defendant-appellee in third party demand.
Before COVINGTON, LOTTINGER and COLE, JJ.
LOTTINGER, Judge.
This is a suit on an open account filed by AAA Tire and Export, Inc. against Big Chief Truck Lines, Inc. for the sum of $4,765.07. The defendant filed a third party demand against Adam Dixon, Dixon and Company, Inc. and Dixon Trucking Company, *428 seeking to be indemnified for any sums it is required to pay on the principal demand.
The issue on appeal is whether Adam Dixon, terminal manager for Big Chief's Baton Rouge operation, had either actual or apparent authority to buy tires for Big Chief from AAA. The trial judge held he did not and dismissed AAA's suit. This appeal has been timely perfected.
AAA, a Florida Corporation which made over-the-phone sales of truck tires and tubes to numerous trucking concerns, made its first sales call to Big Chief in February, 1977. Big Chief was an interstate and intrastate carrier of principally petroleum products. The company, however, owned no trucks or trailers of its own. It leased trucks and trailers from other firms, which handled most of their own maintenance and expense costs.
Robert E. Taylor, president of AAA, obtained Big Chief's name from a Dunn & Bradstreet card which listed Big Chief as a truck hauling company and therefore a potential customer of AAA. Taylor did not know what type of hauling company Big Chief was, but he apparently thought the company would be in need of tires. Dunn and Bradstreet also listed Adam Dixon's name, but the evidence is unclear as to whether Dixon's position with Big Chief was printed on the card. Taylor talked to Dixon on the phone and made his sales pitch. Dixon ordered a number of tires and tubes and requested delivery at Big Chief's Baton Rouge terminal.
Dixon also testified that he told either Taylor or the tire shipper or both that the tires should be addressed to Dixon and Company, a truck leasing firm Dixon operated on the side. Taylor denied this. Dixon also supplied Taylor with two credit references, one from Bossier City Bank and the other from a local tire company. Bossier Bank handled bank business for Dixon and his firm, but did not have an account with Big Chief. Dixon testified that he did business with the local tire company, but that he only bought tires for his own company's trucks. Taylor turned the credit information over to a factor, who supposedly checked the references and approved the credit. The tires were shipped on credit with no down payment, and invoices were later mailed to Big Chief in Baton Rouge. Payments were due in two monthly installments. About a month later, and before any payment had been made on the first shipment, Taylor made a second sales call to Dixon, who ordered another batch of tires and tubes.
All tires were eventually delivered but no payments were made. Dixon said some tires were placed on his own trucks but he did not know how the other tires were used. Dixon's testimony was confusing as to whether any of the tires he ordered were ever placed on trailers which had been leased by Big Chief. He said some of the tires arrived with the words Dixon and Company written on them in yellow color. Dixon has since filed for personal bankruptcy, but AAA was not listed as a creditor.
Stewart C. Bushong, owner and chairman of the board of Big Chief, testified that Dixon had no actual authority to buy tires on behalf of Big Chief. Bushong explained that since Big Chief did not own any trucks, it rarely if ever had the need for tires or tubes to use on the trucks it leased. If a tire on a truck went flat, the lessor was usually called in to make a replacement. Bushong did not recall any time that Big Chief personnel made tire replacements on trucks or trailers leased by the company.
Bushong also testified that Dixon's duties and responsibilities were outlined specifically in a letter Bushong wrote to Dixon when Dixon was hired as terminal manager. The letter gives Dixon authority "to operate and manage our Baton Rouge terminal and over see [sic] the expansion of this facility as our resources permit.
"Specifically, these responsibilities include generation of new accounts and other sales activity, service, lease operator management, dispatcher, maintenance and the required on-site accounting and support for these operations."
*429 The plaintiff claims on appeal that Dixon had either actual or apparent authority to buy the tires and that Big Chief is therefore liable for the purchase price. The law of agency in Louisiana has its roots in the Civil Code, La.C.C. arts. 2985-3023, but the jurisprudence regarding actual and apparent agency has developed to a large extent outside of the code.
An actual agency is a contract between the principal and agent created either expressly or by implication. Broadway v. All-Star Insurance Corporation, 285 So.2d 536, (La.1973); Pailet v. Guillory, 315 So.2d 893 (La.App. 3rd Cir. 1975); Ebert v. Babin, 200 So.2d 672 (La.App. 3rd Cir. 1967); Busby v. Walker, 84 So.2d 304 (La.App. 2nd Cir. 1955). See also Dart Distributors, Inc. v. Foti Enterprises, Inc., 271 So.2d 705 (La. App. 1st Cir. 1972).
An agency is created expressly by the oral or written agreements between the parties. It is created by implication when, from the nature of the principal's business and the position of the agent within that business, the agent is deemed to have permission from the principal to undertake certain acts which are reasonably related to the agent's position and which are reasonable and necessary concomitants of the agent's express authorization. Implied authority connotes permission from the principal for the agent to act, though that permission is not expressly set forth orally or in writing. Generally, one should look from the viewpoint of the principal and the agent to determine whether the agent has implied authority.
The concept of apparent authority only comes into play when the agent has acted beyond his actual authority and has no permission whatsoever from his principal to act in such a manner. The principal will be bound for such actions if he has put his agent in such a position or has acted in such a manner as to give an innocent third person the reasonable belief that the agent has authority to act for the principal. The facts and circumstances of each case must be examined to determine the reasonableness of the third party's belief. One must look from the viewpoint of the third person to determine whether an apparent agency has been created. In transactions between businessmen, the nature of the business and the customs and the usages within the trade can be important factors to be considered.
The trial court did not address in detail the argument that Dixon had actual authority, either express or implied, to order the tires. The record, particularly the letter outlining Dixon's duties and responsibilities, convinces us that Dixon had neither express nor implied authority to buy tires from AAA. Although the letter from Bushong lists "maintenance" as one of Dixon's responsibilities, Dixon was well aware that maintenance did not include purchasing tires for Big Chief because Big Chief did not own any trucks for which tires would be needed. Both Bushong and Dixon were in agreement that Dixon had no actual authority to buy the tires. Had Big Chief been a trucking firm which purchased and maintained its own trucks, our result would probably be different, because in that case Dixon would certainly have had the implied authority as terminal manager to purchase tires. But such is not the case, and the trial judge was correct in deciding that no actual authority existed.
The issue is thus narrowed down to the question of whether Dixon had apparent authority to purchase the tires. We must survey the situation from the viewpoint of AAA to determine whether Taylor was reasonably justified in his belief that Dixon had authority to purchase the tires for Big Chief. Taylor had no independent knowledge of Big Chief's existence or operation outside of the four corners of the Dunn & Bradstreet cards which he used to locate customers. The two credit references given to Taylor by Dixon were references for Dixon's independent companies, and not for Big Chief. Had those credit references been adequately checked by AAA's factor, there may never have been tire sales made by AAA to Dixon.
Taylor's contact with Dixon at Big Chief in early February, 1977, was the first time *430 anyone from AAA had ever contacted anyone involved with Big Chief. No effort was made to determine the financial condition of Big Chief, nor was any attempt made to determine whether Dixon had authority to purchase the tires. The only action of Big Chief upon which Taylor could possibly have relied was the act of placing Dixon in charge of the Baton Rouge operation as terminal manager. This alone, however, was insufficient to give Taylor a reasonable belief that Dixon had authority to purchase tires for his principal, Big Chief. The trial court correctly determined that there was no apparent authority on the part of Mr. Dixon.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed. AAA will bear the costs of this appeal.
AFFIRMED.