JOHN S. COVINGTON, Judge.
Genina Marine Services, Inc. (Genina) de-volutively appealed the October 23, 1985 judgment dismissing its suit to recover monies allegedly owed by Mobil Oil Exploration & Production Southeast, Inc. (MOEP-SI) and to declare valid Genina’s lien and privilege on various oil producing properties, which was filed under La.R.S. 9:4861 et seq., The Louisiana Oil Well Lien Act. MOEPSI answered the appeal, requesting that “[t]he judgment of the trial court should be amended to hold, alternatively, that the Oilwell Liens, filed by Genina, which served as the basis for Genina’s claim, were not timely filed and therefore, both were invalid.”
Genina moved for summary judgment, claiming, inter alia, that there was no genuine question as to material fact that its privilege had not prescribed and its liens were, accordingly, timely filed. MOEPSI filed a cross motion for summary judgment asserting that “[t]he liens are unenforceable because notice of the same was not recorded until more than one year after the completion date of the work for which the lien is claimed[,] a time well in excess of the 90 days expressed in ... La.R.S. 9:4861 et seq.” The motions were heard on January 17, 1985 and both were denied. The court’s minute entry reflects the denials and the notation “Written judgment to be submitted at a later date for the Court’s signature.” The record neither contains a formal judgment dismissing Genina’s and MOEPSI’s motions for summary judgment nor a minute entry that a judgment denying both motions, or either motion, was submitted to or signed by the judge. The judgment which is the subject of this appeal is silent on the matter of the timeliness of recordation of the liens.
The trial court, in written reasons for judgment dated and filed September 25, 1985, stated the pertinent facts as follows:
Certain facts are not in dispute. Geni-na ... and Briley Marine [,Inc.] entered into a written management agreement on October 24, 1978 whereby Briley would manage four vessels owned by Genina. Briley then entered into an agreement with [MOEPSI] for the charter of these vessels. [MOEPSI] paid the monies due ... Briley but Briley did not pay Genina. Subsequently Briley filed for bankruptcy under Chapter 11.
In [an adversary proceeding in] the bankruptcy ..., Genina contended the monies paid by [MOEPSI] to Briley were not assets of Briley but belonged to Geni-na since Briley was its agent. The Bankruptcy Court found ... that [,] while the *924 original relationship between Briley and Genina was that of an agent and principal, certain oral modifications changed the relationship to that of debtor-creditor. Under this finding, the Bankruptcy Court held that the monies paid by [MOEPSI] were assets of Briley and subject to control by the Bankruptcy Court. (Brackets supplied.)
After a thorough analysis of the testimony and documentary evidence, the trial judge found that Genina had clothed Briley with apparent authority to deal on Genina’s behalf with third persons, into which category MOEPSI fit, and “since Genina may not deny agency[,] the effect of apparent authority is the same in this case as if such relations existed.”
ASSIGNMENTS OF ERROR
Appellant assigns as errors the trial court’s findings that:
1. Louisiana law, rather than federal maritime law, governed in determining the legal effect of the Genina-Briley management agreement, including MOEPSI’s affirmative defense of payment;
2. The Bankruptcy Court’s judgment in the adversary proceeding, brought in Bri-ley’s Chapter 11 Bankruptcy, holding that money paid by MOEPSI to Briley for the boat services Briley provided MOEPSI was Briley’s money, was not binding on the state court in the instant case;
3. Genina had clothed Briley with apparent authority to deal with third persons on Genina’s behalf in chartering the boats Genina owned; and
4. MOEPSI carried its burden of proving the affirmative defense of payment and that Genina, within contemplation of law, had been paid by MOEPSI’s paying Briley for the boat services furnished by Briley under contract with MOEPSI.
FEDERAL MARITIME LAW APPLICABILITY
Appellant argues that: “[A]ll maritime contracts are governed by federal maritime law”; “who is a party to a maritime contract is a question of federal maritime law”; “by pleading that Briley was Genina’s agent, [MOEPSI] is pleading that Genina is a party to the time charters ... [which raises] a question of federal maritime law”; and “the district court erred by applying Louisiana law.” Appellant contends that the question of whether federal or Louisiana law applies “is more than academic” because: (1) “[F]ederal maritime law is a national system”; (2) “[S]tate courts are bound by the decisions of federal courts”; and (3) “the U.S. Supreme Court only has jurisdiction to review the application of federal law by state courts.”
Appellee, MOEPSI, succinctly and accurately restates appellant’s argument as being “based upon the logic that since a charter of a vessel is a maritime contract and all maritime contracts are governed by the federal maritime law, the management contract must also be governed by the federal maritime law.” Appellee straightforwardly labels appellant’s argument as “without any foundation in either law or in fact” and argues, additionally that:
[T]he Bankruptcy Court, in its reasons for judgment, in making its determination of the effect of the contract, relied upon a ... Louisiana law and specifically three (3) Louisiana cases in reaching its conclusion. Fortunately, plaintiff’s argument is academic since there is [no] “federal agency law” which can be used in determining this matter. A review of the federal cases shows that in the absence of federal agency law, courts look to the law of the pertinent state or to the [Restatement of [A]gency. Accordingly ... the law of Louisiana relating to agency ... is the applicable law in this situation.
(Brackets and elipsis supplied.)
The written reasons for judgment, which Bankruptcy Judge Rodney Bernard, Jr. assigned in the adversary proceeding in Bri-ley's bankruptcy, offered into evidence by appellant in the instant case, contains the following pertinent findings of fact and conclusions of law:
Plaintiff [Genina] filed, its initial complaint on May 6, 1983, alleging among other things that defendant, Bri- *925 ley Marine, Inc., was an agent for the plaintiff and had received funds in its capacity as agent which plaintiff sought to recover from the debtor’s estate.
[[Image here]]
[T]he court finds that ... Briley ... did agree to operate and manage [Geni-na’s] three ... motor vessels for ... $5,000.00 per month during the year of 1978. This agreement [is dated October 24, 1978 and] was reduced to writing between the parties.... The agreement is titled “Management Contract” ... [and] [u]nder the terms of this agreement, Briley ... was to find jobs for Genina[’s] ... motor vessels and to contract for said jobs in the name of Briley ... who at the time was well known generally in the offshore boat business and was on an approved list for various oil companies seeking charters of motor vessels. As funds were received by Bri-ley ... from these charters, [they] were to be deposited in a special account designated and controlled exclusively by [Gen-ina]. ... [T]he written agreement between the parties was required to be executed as a requisite part of a loan package by a lender of Genina ....
[[Image here]]
[T]he contract of October 24, 1978 ... was [orally] modified in three (3) substantial ways during the term of the contract. The relationship ... [evolved into one in which] Genina charged Briley for the use of its vessels on a monthly basis and Briley chartered the vessels to third parties invoicing ... [them] for the use of the vessels during any given month for its own account ... [and,] in turn, Genina paid Briley a monthly fee for managing Genina’s vessels.
While the parties might have intended [originally] by their written agreement to establish a principal-agent relationship, the relationship became that of debtor and creditor. Briley was excused from ... [turning] over funds ... to a bank [account] designated and controlled by Genina. Instead [Briley] was simply invoiced by Genina for the use of Genina’s vessels on a monthly basis.
[[Image here]]
... Although the original written contract ... dated October 24, 1978 may have been intended to be that of an agency contract only, it is clear ... that various oral modifications ... [created] a new agreement ... [under the terms of which Genina] would extend credit for the use of its vessels to [Briley, thus creatpng] a creditor-debtor relationship between the parties.
... In the case at bar, there is no legal requirement that the original contract, the “Management Agreement,” be in writing. The contract itself does not contain a provision that would exclude oral modifications between the parties .... [T]he oral modifications made by the parties are sufficient to change the nature of the contract from that of an agency-principal type agreement to that of a debtor-creditor relationship.
[[Image here]]
... [A]ll invoices prepared by [Briley] to third parties for the use of Genina’s vessels and the payments received therefrom are property of the estate under 11 U.S.C. Sec. 541(a). The definition of property of the estate is extremely broad and includes equitable as well as legal interests of the debtor. It certainly includes the debtor’s accounts receivable.
(Brackets, elipsis, and emphasis supplied.)
Appellee correctly asserts that the Bankruptcy Court relied on three Supreme Court of Louisiana cases as the basis for holding that the “Management Agreement” was subject to oral modification.
We agree with appellee that the trial court properly failed to apply a non-existing federal law of agency in interpreting the “Management Agreement.” Accordingly, appellant’s first assignment of error is without merit.
*926 THE BANKRUPTCY JUDGMENT
Appellant argues (and it seems contradictory to us) that the Bankruptcy Court judgment decreeing Briley the owner of the accounts receivable is res judicata because: (1) federal law determines the effects of a federal judgment; (2) under federal law, both a party to a federal proceeding resulting in a judgment “and a person whose interests were represented are precluded from relitigating an issue decided in the federal proceeding”; (3) MOEPSI’s “interests were represented [by Genina in the adversary proceedings in bankruptcy] because Genina contended that Genina owned the money”; (4) the bankruptcy judgment decreed Briley owned money paid by MOEPSI and other oil companies; and (5) the judgment that Briley owned the money applies to Genina, MOEPSI, “and the whole world.” Arguing that the trial court’s holding that the Bankruptcy Court’s judgment was not res judicata and not binding on the state court “is repugnant to the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the Supremacy Clause,” appellant asserts: “If Bri-ley is the owner, then Genina was not paid by [MOEPSI]. If Briley does not own the money, then the money should have been delivered to Genina. This is an either-or situation. The U.S. Constitution will not permit the contradictory results in this case.”
La.R.S. 13:4231, formerly designated as La.C.C. art. 2286, states the governing principles of res judicata, as follows:
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.
Appellee argues that:
[T]he judgment of the Bankruptcy Court cannot be res judicata since “the thing demanded” in the Bankruptcy Court is not the same, “the cause of action” is not the same, and certainly, the “parties” are not the same. ... [MOEPSI] was not a party to the Bankruptcy Court [proceedings], and had no opportunity to participate in the proceedings, and was not even aware of the proceedings. Accordingly, this Court clearly has a right to determine whether or not there was an agency relationship created by the management contract, the intent, and the acts of the parties.
(Brackets and elipsis supplied.)
In Swope v. St. Mary Parish School Board, 256 La. 1110, 241 So.2d 238 (1970), on rehearing, the majority, in an opinion by the late Justice Albert Tate, Jr., recalled the writs previously issued and dismissed plaintiffs-relators’ petition. Justice Tate stated that:
The object of the demand sought to be enforced here by these state proceedings — that the federal court was without authority to order the removal of this state court suit to it — has been previously decided by final judgment in the federal proceedings to which the present litigants were parties. This judgment has become definitive due to the failure of the plaintiffs to appeal it or seek other direct review. Res judicata therefore precludes collateral state attack upon this prior federal judicial determination of the question. See City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958).
As we noted in our original opinion, a long-settled and unbroken line of decisions so holds:
... If a federal court rejects a motion to remand a state proceeding removed to it, and its final judgment is not appealed, the federal judgment in the removed suit is conclusive upon the parties to it; this judgment is a bar to further proceedings in the state court. (United States Supreme Court citations omitted.)
The plaintiffs seek to evade the force of these authorities attempting to distinguish them. They point out that none of them concern instances where the party who removed the suit was not a party to the state suit as initially filed.
*927 The important criteria for res judicata, however, does not concern this circumstance but, instead, whether there was an identity of parties in the federal proceedings, including to the decision of the motion to remand filed there by the present plaintiffs.
All of the parties to this present state suit ... were also parties to the decision and determination in federal court of the motion to remand filed there by the present plaintiffs. At the same time, the juridical facts asserted as cause or cause of action were the same as now.... Likewise, the object of this demand (the thing demanded) is the same at this stage in this state suit as that sought in the federal remand hearing ....
The prior federal judgment of dismissal, resultant from the federal court’s denial of the plaintiffs’ motion to remand, is now a definitive judgment, since not appealed and no longer appealable, .... Since the requisite identities of (a) parties, (b) cause or cause of action, and (c) object of the demand (the thing demanded) are present between the present state proceeding and the prior federal determination, such latter determination has acquired the authority of the thing adjudged, i.e., is res judica-ta.
The federal ruling is thus conclusive upon the parties to it. It now bars the plaintiffs from raising again before this court the identical demands previously rejected by such ruling.
241 So.2d at 246-247. (Emphasis in first and last paragraphs of the excerpt, parenthesis, and elipsis, are ours; other emphasis is Justice Tate’s.)
In American Mannex Corporation v. Rozands, 462 F.2d 688 (CA 5, 1972), the Court, per Wisdom, C.J., affirmed the district judge’s dismissal of taxpayer’s suit challenging the constitutionality of a Louisiana statute imposing ad valorem tax on their property as violative of the Import-Export Clause of the U.S. Constitution. Previously the taxpayers had contested, in state court, the levy of the same tax on the same property, raising the same constitutional objection. The federal district court held that “the federal suit was barred by the earlier state court determination of the constitutional issue between these same parties ... not ... as a matter of res judicata, but ... under the Louisiana doctrine of ‘judicial estoppel.’ ” 462 F.2d at 689. Judge Wisdom reasoned, in pertinent part, that:
When the parties and the cause of action litigated are the same in state court as in federal court, the doctrine of res judicata has been held to bar federal relitigation, even if a federal constitutional question is in dispute, (citations omitted.) Similarly, it has been held that disputed factual or legal issues arising between the same parties cannot be relitigated in federal court after a valid state court determination of the same issues. The principle may be described as one of “judicial estoppel” in Louisiana, (citations omitted); or “collateral estoppel” in other states, (citations omitted.) But the result is the same. In accordance with 28 U.S.C. § 1738, the federal court follows the state rule of repose.
462 F.2d at 690. (Emphasis and parenthesis supplied.)
The record fails to establish that MOEPSI was made a party to the adversary proceeding in Briley’s bankruptcy, either by Genina’s complaint or by inter-pleader filed by Briley’s trustee or any other creditor of Briley. Thus, a necessary element for according res judicata effect of the Bankruptcy Court’s judgment in the state court proceedings was conspicuously missing. Appellant’s second assignment of error is without merit.
AGENCY
The trial court reasoned, in pertinent part, that:
Two requirements must be met for the doctrine of apparent authority to apply. First the principal must make some form of manifestation to an innocent third party. Secondly the third party must rely reasonably on the purported authority of *928 the agent as a result of the manifestation.
[[Image here]]
... Genina knew Briley was engaged in chartering Genina’s vessel[s] to [MOEPSI] and did not attempt to stop [Briley]. ... Genina was aware of the charter agreement between Briley and [MOEPSI] and that [MOEPSI] knew that the vessels were owned by Genina.
The second part of that test is also met because [MOEPSI] relied on this acquiescence to enter into the charter agreement. This reliance was reasonable. [MOEPSI’s] personnel knew the owners of Genina ... very well and [Genina] did not object to Briley chartering its vessels. It was reasonable for them to assume that Briley was Genina’s agent.
Apparent authority does not create an actual agency relationship, (citation omitted); but is a principal (sic) of estoppel which operates in favor of third persons like [MOEPSI], ... Therefore, since Genina ... may not deny agency[,] the effect of apparent authority is the same in this case as if such a relationship existed.
[[Image here]]
The facts are undisputed that [MOEP-SI] paid Briley ... the money owed. Since apparent authority clothed Briley ... with an agency-like relationship, payment to Briley. ... had the same legal consequence as payment to Genina .... This Court finds that [MOEPSI] has met its burden of proving its affirmative defense of payment. The Court finds that payment was made ....
[[Image here]]
The Bankruptcy Court’s judgment is based solely on its appreciation of the terms of the written agreement between Briley and Genina, not the effect such modifications would have on third persons. There is no evidence that [MOEP-SI] ever knew about the subsequent oral modifications upon which the Bankruptcy Court based its judgment.
(Parenthesis, brackets, emphasis, and el-ipsis supplied.)
AAA Tire & Export, Inc. v. Big Chief Truck, 385 So.2d 426 (La.App. 1st Cir. 1980), relied upon by the trial court in the instant case, states the applicable principles as follows:
An actual agency is a contract between the principal and agent[,] created either expressly or by implication.
An agency is created expressly by the oral or written agreement between the parties. It is created by implication when, from the nature of the principal’s business and the position of the agent within that business, the agent is deemed to have permission from the principal to undertake certain acts which are reasonably related to the agent’s position and which are reasonable and necessary concomitants of the agent’s express authorization. Implied authority connotes permission from the principal for the agent to act, though that permission is not expressly set forth orally or in writing. Generally, one should look from the viewpoint of the principal and the agent to determine whether the agent has implied authority.
The concept of apparent authority only comes into play when the agent has acted beyond his actual authority and has no permission whatsoever from his principal to act in such a manner. The principal will be bound for such actions if he has put his agent in such a position or has acted in such a manner as to give an innocent third person the reasonable belief that the agent has authority to act for the principal. The facts and circumstances of each case must be examined to determine the reasonableness of the third party’s belief. One must look from the viewpoint of the third person to determine whether an apparent agency has been created. In transactions between businessmen, the nature of the business and the customs and usages within the trade can be important factors to be considered.
385 So.2d at 429. (Brackets, elipsis, and emphasis supplied.)
The “Management Agreement” entered into between Genina and Briley, evidenced *929 by the written instrument dated October 24, 1978, created an actual agency. The record supports this conclusion. Whether oral modifications of the management agreement changed the relationship of Genina and Briley from that of principal-agent to creditor-debtor is immaterial insofar as MOEPSI is concerned. The record supports MOEPSI’s contentions that its dealing with Briley, combined with several face-to-face conversations between the owners of Genina and MOEPSI’s personnel concerning increased rental for the use of Genina’s vessels being managed or hired out by Briley to MOEPSI, were conducted in good faith and on the basis of a reasonable reliance that Briley had Genina’s authority to continue managing its boats. MOEPSI was never made aware of any oral modifications of the “Management Agreement,” did not have its suspicions aroused that oral modifications may have taken place which might have detracted from Briley’s previously conferred express authority, and was never requested by Genina to alter its method of paying for the use of the boats (including, but not limited to, issuing its checks made payable to Geni-na and Briley jointly), or any other disclosure which would have alerted MOEPSI that something was amiss.
We differ with the trial court only in one respect. The trial court held an apparent authority was created by Genina’s actions taken as a whole. We hold that an express agency was created by the “Management Agreement” at the very outset. Insofar as MOEPSI is concerned, that agency relationship never ceased and was not modified by Genina and Briley. For the latest expression of the Louisiana Supreme Court on the concept of apparent authority, see Boulos v. Morrison, 503 So.2d 1 (La.1987).
Justice Watson, for the court, in Boulos, observed, in pertinent part, that:
Mandate is an act by which one person, a principal, gives power to another, an agent, to transact for him and in his name one or several affairs. LSA-G.C. art. 2985. An agent’s power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. ... As between principal and agent the limit of the agent’s authority to bind the principal is governed by the agent’s actual authority. As between the principal and third persons, the limit of an agent’s authority to bind the principal is governed by his apparent authority. ... Apparent authority is a judicially created concept of estoppel which operates in favor of a third party seeking to bind a principal for the unauthorized act of an apparent agent.
For the doctrine of apparent authority to apply, the principal must first act to manifest the alleged agent’s authority to an innocent third party. Second, the third party must rely reasonably on the manifested authority of the agent. ... [T]he principal will be bound for the agent’s actions if the principal has given an innocent third party a reasonable belief the agent has authority to act for the principal. ... The burden of proving apparent authority is on the party relying on the mandate.
A third party seeking to benefit from the doctrine of apparent authority may not blindly rely upon the assertions of an agent. He has a duty to inquire into the nature and extent of the agent’s power.
Id. at 3. (Brackets, elipsis, and emphasis supplied.)
The greater includes the lesser. We hold the record establishes that an actual agent-principal relationship was created by written contract, which was subsequently modified orally. Thus, the record establishes that, at the very least, Briley possessed apparent authority to bind Genina up until the time Briley filed for protection under Chapter 11 of the Bankruptcy Act and the fact of such filing was communicated to entities and persons who had a business relationship with Briley.
Appellee, MOEPSI, carried its burden of proving the mandate of agency. Thus, payment to Genina’s agent was, in contemplation of law, payment to Genina for the use of the motor vessels.
*930 “Where there is credible evidence before the trier of fact, which furnishes a reasonable factual basis for the trial court’s conclusion, an appellate court should not reverse unless the trial court is clearly wrong.” Boulos, supra, at 3; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Our thorough review of the record of this proceeding convinces us that the trial court did not commit manifest error. Enough credible evidence was adduced which furnished a reasonable factual basis for the trial court’s conclusion.
Appellant’s third and fourth assignments of error are without merit.
The record supports the trial court’s conclusion that payment to Briley was, in contemplation of law, payment to Genina, thus MOEPSI owed nothing more to Genina. Having concluded the MOEPSI owed nothing to Genina, we expressly hold (and the trial court impliedly held) that Genina’s liens have no legal effect whatsoever. We deem it unnecessary to address the issue of the timeliness of the filing of the liens under The Louisiana Oil Well Lien Act, La.R.S. 9:4861, et seq.
For the foregoing reasons, the judgment of the trial court is affirmed. Appellant is cast for all costs of this proceeding, including the appeal. La.C.C.P. art. 2164.
AFFIRMED.