539 So.2d 685 (1989)
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF NATCHITOCHES, Plaintiff-Appellee,
v.
Eula Holliday BURROWS (Defendant-Appellant) and William A. Pierce (Defendant-Appellee).
No. 87-1212.
Court of Appeal of Louisiana, Third Circuit.
February 8, 1989.
*686 Campbell, Campbell & Johnson, John T. Campbell, Minden, for defendant-appellant.
William A. Pierce, in Pro. Per., Natchitoches, for defendant-appellee.
Gahagan & Gahagan, Marvin F. Gahagan, Natchitoches, for plaintiff-appellee.
Before GUIDRY, KNOLL and KING, JJ.
KING, Judge.
The issue presented by this appeal is whether a creditor is entitled to a deficiency judgment when it served notice of seizure in a suit for executory process on the debtor at the domicile of the debtor's daughter and son-in-law. The son-in-law was an endorser on one of two promissory notes executed by the debtor and sued on in the suit for executory process.
This is an appeal from a judgment of the trial court awarding First Federal Savings and Loan Association of Natchitoches (hereinafter First Federal) a deficiency judgment against Eula Holliday Burrows (hereinafter Burrows) and her son-in-law, William A. Pierce (hereinafter Pierce). We find that service of the notice of seizure on Burrows in the executory proceeding was legally insufficient. For this reason, we reverse the trial court's judgment and dismiss First Federal's suit against Burrows.

FACTS
First Federal was the holder of promissory notes executed by Burrows which were secured by mortgages encumbering tracts of immovable property located in Natchitoches Parish, Louisiana. The two mortgages were on two different tracts of land, were executed on different dates, and secured two different promissory notes payable to the order of First Federal.
On October 9, 1980, Burrows executed a promissory note for the principal sum of $56,000.00, payable in 360 consecutive monthly installments of $554.58, beginning November 9, 1980. Burrows was the sole obligor on both the note and mortgage with which the note was secured.
A second promissory note for the principal sum of $43,200.00 was executed by Burrows and endorsed by Pierce on March 21, 1980. This note was payable in 360 consecutive monthly installments of $494.84, commencing April 31, 1980. Burrows was also the mortgagor on the mortgage with which this note was secured.
*687 When the two notes and mortgages were executed, Burrows was accompanied to the office of First Federal by her daughter and son-in-law, Pierce. The record seems to indicate that she agreed to make the loans in order to "help them" purchase rental property. The Pierces received the rentals from these properties and, in return, paid the monthly installment payments on both notes.
The address used by First Federal with reference to these two loans was 509 Chris Street, Natchitoches, Louisiana, which was that of Burrows' daughter and son-in-law, Pierce. First Federal was also given Burrows' home address of P.O. Box 295 in Ringgold, Louisiana at the time of the loans. However, First Federal mailed all correspondence related to these two loans only to the Chris Street address.
Burrows and Pierce failed to make a payment on either note after June 6, 1986. This left a total outstanding principal balance of $97,249.00 due on both notes. Pursuant to acceleration clauses contained in the notes and mortgages, First Federal declared the entire indebtedness immediately due and on December 2, 1986, instituted executory proceedings only against Burrows to foreclose the two mortgages. A writ of seizure and sale was issued to Burrows on December 10, 1986, and the mortgaged properties were seized by the Sheriff of Natchitoches Parish on January 2, 1987.
An examination of the Sheriff's return shows that the notice of seizure, as well as the notice for appointment of an appraiser, were served on Burrows by leaving "same at her dwelling house or usual place of abode, with Mrs. William A. Pierce ... in Natchitoches Parish, Louisiana."
Thereafter, the two properties were advertised, appraised, and sold by the Sheriff as a single item. The properties were both appraised for $90,000.00; and, at the Sheriff's Sale held on March 4, 1987, they were both adjudicated to First Federal for $63,000.00, which was two thirds of the appraised value of both properties, plus costs.
On April 21, 1987, First Federal filed a suit for a deficiency judgment in the original foreclosure suit against Burrows and Pierce to obtain a judgment for the remaining balance owed on the two notes, after credit for the price paid for the mortgaged properties at the Sheriff's Sale, plus interest and attorney's fees. Pierce was joined as a co-defendant because he was an endorser on one of the notes and solidarily liable with Burrows for the outstanding balance owed on that note.
To determine the deficiencies owed on each promissory note, First Federal devised a ratio of the original principal amounts of each note to the total of the two. Next, it applied this ratio to the total deficiency (determined by subtracting the price received at the Sheriff's sale from the total debt) to arrive at the amount of the deficiency. Using this ratio, First Federal determined that Burrows owed $20,774.25 on the first note and was solidarily liable with Pierce for the amount of $16,323.01 on the second note.
A copy of the citation and petition in the suit for deficiency judgment were initially sought to be served on Burrows at the Chris Street address, but Mrs. Pierce refused to accept service. After the documents were returned unserved, First Federal gave their attorney Burrows' home address in Ringgold, Louisiana. Citation was then reissued and the Sheriff's return shows that Burrows was then personally served with the suit for deficiency on April 29, 1987.
Burrows excepted to plaintiff's petition for deficiency judgment, alleging that she was domiciled in Bienville Parish, Louisiana, and that the proper venue for the deficiency action against her was in Bienville Parish, Louisiana. Alternatively, Burrows alleged that First Federal had no cause of action to obtain a deficiency judgment against her because she was not served with notice of the seizure in the executory proceeding, as required by LSA-C.C.P. Art. 2721. She also argued that the method of appraisal and sale employed by the Sheriff, appraising and selling both mortgaged properties together, made it impossible to accurately determine which mortgaged property brought what price for purposes of determining a deficiency on the note secured by a mortgage on one of the properties.
*688 The exceptions were tried on June 30, 1987, and overruled by the trial court. Burrows then answered, reiterating her exceptions, and pleading them as a defense to the action. First Federal entered a preliminary default against Pierce on July 9, 1987, after he failed to timely answer the suit.
After trial, the trial court rejected all defenses asserted by Burrows and rendered a deficiency judgment against her and, by confirmation of default judgment, against Pierce on July 28, 1987. Burrows timely appeals.
Burrows contends on appeal that the trial court erred in (1) failing to sustain her exception of improper venue; (2) refusing to sustain her exception of no cause of action; and (3) holding that First Federal was entitled to a deficiency judgment against her.
As we have determined that the resolution of Burrows' third assignment of error is dispositive of this appeal, we will only address that issue.
Pierce did not appeal the lower court's default judgment finding him solidarily liable with Burrows in the amount of $16,323.01, plus interest and attorney's fees. Therefore, the judgment against him is now final.

EXECUTORY PROCEEDINGS
An executory proceeding in Louisiana is an in rem action by which a creditor may "effect the seizure and sale of property, without previous citation and judgment, to enforce a mortgage or privilege thereon evidenced by an authentic act importing a confession of judgment ..." LSA-C.C.P. Art. 2631. First Guar. Bk. v. Baton Rouge Petroleum, 529 So.2d 834 (La.1987).
Executory process is regarded as a harsh remedy; thus, it can only be used in instances where it is specifically permitted by law, and only if the creditor can demonstrate there has been a strict compliance with the letter of the law. First Guar. Bk., supra; First National Bank of Lafayette v. Gaddis, 250 So.2d 504 (La.App. 3 Cir.1971); First Guar. Bank v. Ratcliff, 424 So.2d 289 (La.App. 1 Cir.1982), writ den., 432 So.2d 265 (La.1983).
Although LSA-C.C.P. Art. 2640 states citation is not necessary in an executory proceeding, LSA-C.C.P. Art. 2721 mandates that a written notice of seizure be served upon the defendant in an executory proceeding. When a creditor fails to follow the formality of service of notice of seizure on a debtor, the law is clear that it will not be entitled to a deficiency judgment under the provisions of LSA-C.C.P. Art. 2721 et seq. Bank of New Orleans & Trust Co. v. Brule, 389 So.2d 1148 (La.App. 4 Cir.1980); Neff v. Ford Motor Credit Co., 347 So.2d 1228 (La.App. 1 Cir.1977).
It is undisputed that First Federal never attempted personal service or domiciliary service of the notice of seizure on Burrows at her residence in Ringgold in the executory proceedings. Mr. Sam M. Fowler, the accounts servicing officer at First Federal, admitted that the bank did not communicate with Burrows after the two loans were closed. When the two loans became delinquent, all dealings and correspondence were with Mr. and Mrs. Pierce. As previously stated, notice of seizure in the executory process suit was served domiciliary on Burrows at the Pierces' residence in Natchitoches Parish; however, at the time of the executory process suit, Pierce was not made a party to the executory proceeding.
Burrows testified that she had never lived in Natchitoches Parish. Burrows further testified that she first became aware of the seizure, appraisal, and sale of her two mortgaged properties when she was served with citation in the suit for a deficiency judgment.
First Federal maintains that service of the notice of seizure in the executory proceeding on Burrows, by domicilary service upon her daughter, Mrs. Pierce, was valid because Burrows clothed her daughter and son-in-law with apparent authority to act on her behalf as to all matters relating to the two notes and mortgages. Moreover, it argues that Burrows is now estopped to deny the agency relationship which she allegedly created and allowed to continue through the executory process foreclosure. We are not persuaded by this argument.
*689 An agent is defined as one who acts for or in place of another by authority from the latter. Craft v. Trahan, 351 So.2d 277 (La.App. 3 Cir.1977), writ den., 353 So.2d 1336 (La.1978). Under Louisiana law, an agency relationship is created by either express appointment of a mandatory or by implied consent arising from apparent authority. LSA-C.C. Art. 2985; Roberson Ad. Service v. Winnfield Life Ins., 453 So.2d 662 (La.App. 5 Cir.1984); AAA Tire & Export, Inc. v. Big Chief Truck, 385 So.2d 426 (La.App. 1 Cir.1980).
The doctrine of apparent authority was succinctly explained by the Louisiana Supreme Court in Bank of Greensburg v. Forrest, 520 So.2d 728, at page 732 (La. 1988), as follows:
"[A]pparent authority (comma deleted) is a judicially created concept of estoppel which binds the principal for the unauthorized act of an apparent agent in favor of a third person. To trigger the concept, however, the principal must first give the third party reason to believe that the agent had authority to act, on which the third party reasonably relied. The party seeking to prove that an agency relationship exists has the burden of proof...." (Footnotes omitted.)
In this case, First Federal has not met its burden of proving apparent authority. There is no evidence in the record of an agency relationship other than a self-serving statement by Mr. Fowler that it was understood by all parties, from the time of loan application to the foreclosure, that the Pierces were agents of Burrows.
Even assuming that Burrows' actions led First Federal to believe that the Pierces had a general mandate to act on her behalf in matters arising from the loans, First Federal had no reason to believe that this authority encompassed the right to accept service or receive citation for Burrows. First Federal had no basis to believe that the Pierces had a special mandate or express authority to accept service for Burrows in a suit against her for foreclosure of the mortgages she had given to secure notes she had signed.
Powers of attorney are construed strictly and no special authority is implied by the general terms of a procuration except ordinary powers of administration. LSA-C.C. Arts. 2994-2996. Bolton v. Rouss, 144 La. 134, 80 So. 226 (1918). The power to receive service or receive citation in a lawsuit is not a mere act of administration; consequently, an agent must have express authority to exercise such powers. LSA-C.C. Art. 2997; Bolton, supra.
Since there is no evidence that an agency relationship was created under the circumstances presented, or that the Pierces were given special authority to receive legal service or citation for Burrows, we find the trial court committed error in granting First Federal a deficiency judgment against her. First Federal was not legally entitled to a deficiency judgment against Burrows since no notice of seizure was ever properly served on her in the executory proceeding against her. LSA-C. C.P. Art. 2721, et seq.
For the foregoing reasons, the judgment of the trial court against Burrows is reversed and set aside. Judgment is rendered in favor of appellant, Eula Holliday Burrows, and against appellee, First Federal Savings and Loan Association of Natchitoches, dismissing, with prejudice, its suit against Burrows for a deficiency judgment. All costs, both at the trial level and on appeal, are taxed against appellee.
REVERSED AND RENDERED.