BOWES, Judge.
Plaintiff, Frances Kay Thomas, appeals from the denial of her rule for a preliminary injunction. We reverse and remand the case for further proceedings.

PROCEEDINGS

Plaintiff is the owner of three pieces of mortgaged property located on the East Bank of Jefferson Parish. Defendant, United Companies Lending Corporation (hereinafter “United”) as servicer and agent for Southern Mortgage Company is the holder of the three mortgages, having purchased them from Resolution Trust Company as the receiver of French Market Homestead. Defendant instituted executo-ry proceedings, seeking foreclosure on, and seizure and sale of plaintiff’s properties.
Plaintiff and United entered into negotiations; after these were unsuccessful, on August 10, 1992, plaintiff filed a Petition for Temporary Restraining Order and Preliminary and Permanent Injunction to Arrest Seizures and Sales. It is her contention that she and United entered into an agreement in which United agreed to accept a reduced balance pay-out of her loan and that this agreement should be enforced, making her the owner of the mortgage notes.
A temporary restraining order, enjoining the seizure and sale of plaintiff’s property was signed, and on October 19, 1992, plaintiff’s petition for injunction was heard. At its conclusion, the trial court found that there was no agreement between the parties because there was no “meeting of the minds” concerning the terms of the agreement. The trial court dissolved the temporary restraining order initially issued and *988 denied the petition for preliminary injunction.

FACTS

At the hearing on the petition for preliminary injunction, Ms. Thomas testified that she contacted United in March, 1991 to discuss the possibility of a pay-out of her loans. She initially began negotiation with United’s representative, Scott Wensel (she later dealt with Charles Wright). At that time, she was told by Wensel to discontinue payments on the notes pending the pay-out negotiations. Negotiations continued for several months, during which time she was repeatedly told by Wensel that “they were working on the pay-out figure.”
In January, 1992, Ms. Thomas received a letter from United advising her that they had assigned her accounts to attorney Irl Silverstein for foreclosure proceedings, and that “In order to reinstate your loan, you must now contact the attorney’s office [Mr. Silverstein].... Any questions concerning reinstatement of your loan should be directed to the attorney.” Ms. Thomas contacted Mr. Silverstein and explained that she had been trying to obtain a pay-out amount and that she had been repeatedly told that the company was working on setting such an amount; whereupon, Mr. Sil-verstein told her to submit a proposal in writing to him to present to United.
Ms. Thomas further testified that, after she was unable to obtain local financing, she contacted a bank in Alabama which agreed to loan her 70% of the appraisal value of the property, or $155,000.00 (which was less than the remaining balance on the three mortgages of approximately $204,-000.00). As instructed, Ms. Thomas submitted the offer of $155,000.00 in writing to Mr. Silverstein, who, in turn relayed the offer to United.
Approximately one month later, Mr. Sil-verstein contacted Ms. Thomas and said that although United would not accept her offer, they were willing to accept a pay-out of $159,600.00 provided that the pay-out was made no later than April 15,1992. Mr. Silverstein reduced this offer to writing by letter dated April 7, 1992 which he sent to plaintiff.
Ms. Thomas tendered the $159,600.00 and received a receipt from Mr. Silverstein which acknowledged same on April 14, 1992.
Several days later, Ms. Thomas was contacted by Mr. Silverstein who told her that there had been some miscommunication, because United would not accept her payout and that she would need to pay an additional amount of $48,000.00 before the mortgage notes would be released.
Ms. Thomas also testified that, although she understood that Mr. Silverstein had authority to act for United, she also knew that he was presenting the offers to United for their consideration.
Leslie Fatheree testified on behalf of the defendant. She stated that she was a foreclosure specialist with United (the mortgage notes are actually held by Southern Mortgage Company — United is a servicer and agent for Southern Mortgage Company)-
Ms. Fatheree further testified that United received the pay-out offer made by Ms. Thomas in March of 1992 and presented the same to Southern Mortgage. Southern Mortgage would not accept the “short” or reduced balance pay-out; instead they stated three options that they considered acceptable in order for Ms. Thomas to avoid the foreclosure, namely, (1) that she could reinstate the account; (2) she could pay it out completely; or (3) she could pay to them the necessary sum to bring her accounts up to date. Then, her principal balance would be reduced to 70% of the appraised value of the property, which would total $159,600.00.
Ms. Fatheree called Mr. Silverstein and explained these three options; however, he apparently misunderstood her explanation and believed that option three, which would have reduced the principal balance, was a counter-offer for a short pay-out amount. Ms. Fatheree admitted that, contrary to the company’s policy, she did not present these offers in writing to Mr. Silverstein because “after I got off the phone with Mr. Silver-stein, I was confident that he knew what *989 was agreed upon.” Ms. Fatheree further testified that she and Mr. Silverstein never specifically discussed the plaintiffs offer of a reduced pay-out of the balance due.
Mr. Silverstein was present in the courtroom at the trial, but was not called as a witness by either side and did not testify at trial.

ANALYSIS

Plaintiff-appellant alleges that the trial court erred in its finding that no enforceable contract existed between her and United. She contends that Mr. Silverstein was acting as an agent for United and therefore United was bound by the agreement made by Mr. Silverstein on their behalf.
The law of agency in Louisiana has its roots in the Civil Code, LSA-C.C. arts. 2985-3023; however, the jurisprudence governing actual and apparent authority has developed to a large extent outside of the Code. AAA Tire & Export, Inc. v. Big Chief Truck, 385 So.2d 426 (La.App. 1 Cir.1980).
In Boulos v. Morrison, 503 So.2d 1, 3 (La.1987), our Supreme Court summarized the law of agency as follows:
Mandate is an act by which one person, a principal, gives power to another, an agent, to transact for him and in his name one or several affairs. LSA-C.C. art. 2985. An agent’s power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. As between principal and agent the limit of the agent’s authority to bind the principal is governed by the agent’s actual authority. As between the principal and third persons, the limit of an agent’s authority to bind the principal is governed by his apparent authority. Apparent authority is a judicially created concept of estoppel which operates in favor of a third party seeking to bind a principal for the unauthorized act of an apparent agent.
For the doctrine of apparent authority to apply, the principal must first act to manifest the alleged agent’s authority to an innocent third party. Second, the third party must rely reasonably on the manifested authority of the agent. As the Courts of Appeal have correctly held, the principal will be bound for the agent’s actions if the principal has given an innocent third party a reasonable belief the agent had authority to act for the principal. The burden of proving apparent authority is on the party relying on the mandate.
A third party seeking to benefit from the doctrine of apparent authority may not blindly rely upon the assertions of an agent. He has a duty to inquire into the nature and extent of the agent’s power.
[Emphasis added; citations omitted].
Furthermore, when the principal has denied the agent’s authority and there is no proof the principal has ratified the agent’s act, the burden of proving apparent authority is on the person seeking to bind the principal. Byrd v. Cobbs, Allen & Hale Mortg. Co., Inc., 466 So.2d 587 (La.App. 5 Cir.1985). [Emphasis supplied].
We find that the trial court was incorrect in determining that plaintiff did not meet her burden of proof.
Plaintiff’s uncontradicted testimony reflects that she had been trying to negotiate a short pay-out with United for several months preceding the institution of foreclosure proceedings. She was instructed by United’s employee to discontinue payment on the mortgage during these negotiations, which she did. United then instituted foreclosure proceedings against her as a result of her failure to pay on the mortgage.
Plaintiff was directed to deal directly with Mr. Silverstein by United’s letter stating that foreclosure proceedings had begun. Thus, United vested Mr. Silverstein with the apparent authority to negotiate with Ms. Thomas. Almost one year after Ms. Thomas began negotiating for a short pay-out amount, Mr. Silverstein made a counter-offer which to Ms. Thomas seemed reasonable. In light of the fact that she had been trying to obtain a short pay-out amount and that she was told by United to direct her inquiries to Mr. Silverstein it was *990 reasonable for Ms. Thomas to believe that Mr. Silverstein had the authority to act for United in relating to her a counter-offer for a short pay-out of her mortgage notes which he confirmed by written letter and in accepting her check as tendered and giving her a receipt for same.
In addition, as noted by appellant, the record reflects that Mr. Silverstein was present in the courtroom and was prepared to testify; however, United did not call him to the stand on their behalf. Since he was United’s agent, it therefore must be construed that his testimony would not have been favorable to United. Hawthorne v. Kinder Corp., 513 So.2d 509 (La.App. 2 Cir.1987).
Accordingly, we find that Mr. Silverstein had the apparent authority to make a counter-offer to Ms. Thomas which he thought and she thought came from a decision made by United, and to bind United to the agreement which was confected by Ms. Thomas’ acceptance.
Plaintiff’s final argument is that Southern Mortgage Company, as holder of the promissory notes, and not United, is the proper party to bring the foreclosure suits. However, the record reflects that this issue was not raised in the trial court and therefore, we cannot review it here.
For the above discussed reasons, the judgment of the trial court is reversed and a preliminary injunction arresting the seizure and sale of plaintiff’s property is granted in her favor and against defendant, United. The case is remanded for the determination of the appropriate amount of surety.
LSA-C.C.P. art. 3610 provides:
A temporary restraining order or preliminary injunction shall not issue unless the applicant furnishes security in the amount fixed by the court, except where security is dispensed with by law. The security shall indemnify the person wrongfully restrained or enjoined for the payment of costs incurred and damages sustained.
All costs of this appeal are to be borne by defendant, United.
REVERSED AND REMANDED.