United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 10, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 02-30978**

_____

**THE HOUSTON EXPLORATION COMPANY,**

**Plaintiff-Appellee-Cross-Appellant,**

**versus**

**HALLIBURTON ENERGY SERVICES, INC.,**

**Defendant-Appellant-Cross-Appellee.**

_____

**Appeals from the United States District Court
for the Eastern District of Louisiana,
New Orleans Division**

_____

Before JONES, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This litigation between The Houston Exploration Company ("THEC") and Halliburton Energy Services, Inc. ("Halliburton") over the consequences of a THEC gas well blowout is before this court for the second time. The dispute concerns the extent and conse-quences of a work order that absolves Halliburton of liability for its own (ordinary) negligence. In the first appeal, we reversed the district court's decision that Halliburton was grossly

negligent in providing drill testing services to THEC. On remand, the district court again found in favor of THEC, determining that the work order's indemnity provision was invalid because THEC's "company man" did not have actual or apparent authority to bind THEC to its terms. Halliburton again appealed. We reverse and remand.

## I. BACKGROUND

This case arises from a 1997 natural gas explosion from THEC's well located in the Gulf of Mexico. THEC sued Halliburton in federal court, asserting that Halliburton's failure properly to perform drill stem testing operations led to the blowout. Halliburton argued that the parties' indemnity provision precluded recovery. The case was tried before the district court in March 2000. The district court held that Halliburton's conduct was grossly negligent, and thus beyond the scope of the indemnity provision. The court awarded THEC approximately $7,000,000 in damages. We reversed that decision and remanded the case for the district court to determine whether the indemnity provision was "executed by an authorized agent of THEC[.]". See Houston Exploration Co. v. Halliburton Energy Servs., Inc., 269 F.3d 528, 533 (5th Cir. 2001).

On remand, the district court examined the agency question, as well as THEC's other challenges to the validity of the indemnity agreement.[1]

The relevant facts are largely undisputed. The contract for Halliburton to provide drill testing services to THEC was executed through a work order. The work order stated, in red ink directly above the signature line, that "Customer hereby acknowledges and agrees to the terms and conditions on the reverse side hereof which include, but are not limited to PAYMENT, RELEASE, INDEMNITY, and LIMITED WARRANTY provision." The reverse side of the work order contained the indemnity provision at issue.[2]

---

[1] THEC offered several other theories in addition to the authority argument: (1) there was no consent to the object of the contract; (2) the agreement is vitiated due to error; (3) the agreement impermissibly attempts to renounce the warranty of workmanlike performance; (4) the indemnity agreement is ambiguous; (5) a literal reading of the provision leads to absurd consequences; (6) redhibition; (7) breach of contract; and (8) that the indemnity agreement was a contract of adhesion. The district court rejected each of these arguments in open court without elaboration.

[2] The indemnity provision provided that:

CUSTOMER AGREES TO RELEASE HALLIBURTON FROM ANY AND ALL LIABILITY FOR ANY AND ALL DAMAGES WHATSOEVER TO PROPERTY OF ANY KIND OWNED BY, IN THE POSSESSION OF, OR LEASED BY CUSTOMER AND THOSE PERSONS AND ENTITIES CUSTOMER HAS THE ABILITY TO BIND BY CONTRACT. CUSTOMER ALSO AGREES TO DEFEND INDEMNITY AND HOLD HALLIBURTON GROUP HARMLESS FROM AND AGAINST ANY AND ALL LIABILITY, CLAIMS, COSTS, EXPENSES, ATTORNEY FEES AND DAMAGES WHATSOEVER FOR PERSONAL INJURY, ILLNESS, DEATH, PROPERTY DAMAGE AND LOSS RESULTING FROM: . . . LOSS OF WELL CONTROL . . . CUSTOMER'S RELEASE, INDEMNITY AND HOLD HARMLESS OBLIGATIONS WILL APPLY EVEN IF THE LIABILITY AND CLAIMS ARE CAUSED BY THE SOLE, CONCURRENT, ACTIVE OR PASSIVE NEGLIGENCE, FAULT, OR STRICT LIABILITY OF ONE OR MORE MEMBERS OF THE HALLIBURTON GROUP, IN THE SEAWORTHINESS OF ANY VESSEL, OR ANY DEFECT IN THE DATA, PRODUCTS, SUPPLIES, MATERIALS OR EQUIPMENT FURNISHED BY HALLIBURTON GROUP, WHETHER IN THE DESIGN, MANUFACTURING, MAINTENANCE OR MARKETING THEREOF OR FROM FAILURE TO WARN OF SUCH DEFECT.

Halliburton presented the work order to James Hileman, THEC's on-site company man and drilling supervisor. Hileman signed the work order in advance of the job, as was the customary practice between the parties. THEC does not dispute that Hileman had authority to sign the work orders to engage Halliburton's services. THEC asserts instead that he lacked the specific authority to negotiate or execute the indemnity provision on behalf of THEC.

The district court, applying Louisiana law, agreed with THEC and concluded that Hileman lacked "actual authority" because "[n]o evidence was admitted at trial to demonstrate that THEC and Hileman agreed that Hileman could enter into an indemnity agreement with Halliburton on behalf of THEC."[3] Houston Exploration Co. v. Halliburton Energy Servs., Inc., 2002 WL 1963313, *6 (E.D. La Aug. 22, 2002). The district court further concluded that Hileman lacked "implied actual authority" because "Hileman's representation of THEC on the rig as a company man does not manifest an intention on the part of THEC for him to have permission to contract with Halliburton for indemnification and release from liability." Id. Last, the district court found that Hileman lacked "apparent authority" because Halliburton did not reasonably rely on Hileman's manifestation of authority. Id. at *7-8. Accordingly, the

---

[3] Under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(a)(2000), the law of the adjacent state, Louisiana, provides the rule of decision.

4

district court ruled in favor of THEC and reinstated the award. Halliburton appealed.

## II.  STANDARD OF REVIEW

On appeal from a judgment after a bench trial, we review the findings of fact for clear error and the legal issues de novo. Gebreyesus v. Schaffer & Assocs., Inc., 204 F.3d 639, 642 (5th Cir. 2000).  A finding of fact is clearly erroneous "when, although there is evidence to support it, the reviewing court based on all the evidence is left with the definitive and firm conviction that a mistake has been committed." Id.  However, factual findings made under an erroneous view of controlling legal principles are reviewed de novo.  Walker v. Braus, 995 F.2d 77, 80 (5th Cir. 1993).  Under Louisiana law, the trial court's determination of an agency relationship "is essentially a factual matter."  Webb v. Lagniappe Hosp. Corp., 714 So. 2d 901, 904 (La. App. 2d Cir. 1998).

## III.  DISCUSSION

Halliburton argues that Hileman had actual authority to enter into the work order agreement, which by implication included the indemnity provision.  There is no dispute that Hileman had express authorization to sign the work orders.  Express actual authority is created by the oral or written agreement between the principal and the agent.  AAA Tire & Export, Inc. v. Big Chief Truck Lines, Inc., 385 So. 2d 426, 429 (La. App. 1st Cir. 1980). But, THEC asserts that Hileman's express authority did not extend,

5

by implication, to the agreement's indemnification provision.  The district court accepted THEC's argument.[4]  We do not.

The question here is one of agency by implication.  See Anderson Window & Patio Co. v. Dumas, 560 So. 2d 971, 975 (La. App. 4th Cir. 1990) (recognizing that agency may be created verbally, in writing, or by implication).  "The essential test to be applied in determining whether an implied agency exists, is whether the principal has the right to control the conduct of the agent, and whether the agent has the right and authority to represent or bind the principal."  Craft v. Trahan, 351 So. 2d 277, 281 (La. App. 4th Cir. 1977) (citations omitted).  More specifically, implied agency is created when "the agent is deemed to have permission from the principal to undertake certain acts which are reasonably related to the agent's position and which are reasonable and necessary concomitants of the agent's express authorization[.]"  AAA Tire, 385 So. 2d at 429.  Under this standard, the district court determined that Hileman was authorized to agree to some aspects of the contract but not to others.  Such an interpretation is plainly contrary to Louisiana law.  See Southern States Equip. Co. v. Jack Legett Co., Inc., 379 So. 2d 881, 884 (La App. 4th Cir. 1980); Hawthorne v. Kinder Corp., 513 So. 2d 509, 512 (La. App. 2d Cir. 1987).

---

[4] The district court found that "Hileman's representation of THEC on the rig as a company man does not manifest an intention on the part of THEC for him to have permission to contract with Halliburton for indemnification and release from liability."

In *Southern States*, the defendant contracted with the plaintiff 43 times over a three-year period to lease property used to install street lights and traffic signals. *Southern States*, 513 So. 2d at 883. For each transaction, the parties executed an identical "Rental Dray Receipt" that itemized the equipment and contained a limitation of liability provision. *Id*. Most of these receipts were signed by the defendant's construction foreman with the principal's express permission. The trial court concluded that the agent did not have the authority to bind the defendant to the liability provision, even though he was authorized to accept delivery of the equipment. The appellate court reversed. "On some thirty-one prior occasions [the agent] signed dray receipts containing this identical provision and the defendant honored the invoices submitted by the plaintiff based upon these receipts." *Id*. at 884. The appellate court concluded that, under these circumstances, the defendant's foreman "acted as the authorized agent in signing the dray receipts and thereby bound [the defendant] to its terms." *Id*.

The Louisiana court of appeals reached the same result in *Hawthorne*. There, the defendant's employees contracted with the plaintiff, a waste disposal corporation, to empty trash dumpsters at various stores. *Hawthorne*, 513 So. 2d at 509. The contracts each contained a one-year term, with an automatic renewal provision unless written notice of cancellation was given 60 days prior to the term's end. *Id*. at 510-11. The defendant discontinued

7

payments for waste disposal without giving the requisite notice. The trial court determined that the defendant had breached the contract and the court of appeals agreed. The appellate court concluded that the defendant's employees had implied authority to bind the corporation because the employees had express authority to obtain disposal services and the contracts were necessary to obtain those services. Id. at 512. ("Disposal services were necessary in the ordinary course of affairs to which [the defendant] was devoted.") (citation and quotations omitted).

THEC erroneously relies on Equipment Rental Svcs., Inc. v. Campesi, 351 So. 2d 1298, 1299 (La. 1st Cir. 1977), to support its position that Hileman's authority was specifically limited to permitting Halliburton to commence the drill testing operation. In Equipment Rental, the court found that the defendant's super-intendent had authority to sign a receipt, but did not have authority to agree to all the terms in the receipt. Id. at 1298-99. Importantly, the employee signed a contract that dramatically altered the terms of a prior agreement between the parties despite his being authorized only to accept delivery of merchandise. Id. Here, there was no prior agreement, although negotiations for a Master Service Agreement had failed five years earlier. Moreover, THEC ignores the fact that the parties continued to do business pursuant to the work order agreements, which contained indemnity provisions, in the absence of a Master Service Agreement. There is no evidence that the work orders

8

dramatically altered the terms between the parties. Consequently, the logic of Equipment Rental is inapplicable here.

In the instant case, THEC approved and paid hundreds of similar work orders without objection. Many of these work orders were signed by company men, including Hileman, who was THEC's "ultimate authority" for the well in question. In fact, Hileman testified that he continued to sign similar work orders even after the blowout. As in Southern States and Hawthorne, the repeated approval of work orders manifests the scope Hileman's authority. Furthermore, Halliburton refused to commence drill testing unless THEC agreed each time to the terms of the work order. Without Hileman's consent to the indemnity provision, Halliburton would not have performed the service THEC readily admits Hileman was authorized to procure. Thus, Hileman's consent to the indemnity provision was "reasonably related to the agent's position" and was "a reasonable and necessary concomitant[] of the agent's express authorization[.]" AAA Tire, 385 So. 2d at 429.

In the end, THEC management consented to Halliburton's release and indemnity provision, despite any earlier misgivings. See Morgan v. Cedar Grove Ice Co., 41 So. 2d 521, 523 (La. 1949) ("[A] defense interposed by a corporation that its agent had no authority to execute a contract on its behalf is looked upon with disfavor, especially where the contract has been executed in whole

or in part.").[5]  Accordingly, we conclude that Hileman's express authority to enter into the work order agreements necessarily included the implied authority to consent to the release and indemnity provision.[6]

## IV.  CONCLUSION

For the reasons stated above, we **REVERSE** the district court's decision that THEC's agent exceeded his authority and **REMAND** for a determination of Halliburton's contractual entitlement to attorneys' fees and for further proceedings consistent herewith.

**REVERSED and REMANDED.**

---

[5]   Because we conclude that Hileman had actual authority as a matter of law, we need not reach the apparent authority question.

[6]   Like the district court, we reject THEC's other assignments of error. The district court did not abuse its discretion in excluding evidence regarding the scope of authority of Halliburton's employees, as such evidence was immaterial.  Furthermore, THEC's remaining arguments are barred from consideration under this court's mandate rule.  See Tollett v. City of Kemah, 285 F.3d 357, 364 (5th Cir. 2002) (district court "must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces") (citations and quotations omitted).  And, even if these arguments were not barred, they are without merit.