**LESON CHEVROLET CO., INC.,**
**Plaintiff-Appellant,**
**Cross-Appellee,**

v.

**OAKLEAF & ASSOCIATES, INC., et al., Defendants-Appellees,**
**Cross-Appellants.**

**No. 85–3369.**

United States Court of Appeals,
Fifth Circuit.

Aug. 4, 1986.

Mary Catherine Cali, Shows, Clegg & Cohn, Baton Rouge, La., for plaintiff-appellant, cross-appellee.

Karen D. McCarthy, Fawer, Brian, Hardy & Zatzkis, Lynne W. Wasserman, New Orleans, La., for Reynolds & Reynolds, Co.

William L. Schuette, Jr., Franklin, Moore & Walsh, Charles O'Brien, III, Baton Rouge, La., for Oakleaf & Associates, Inc.

Before WISDOM, RUBIN, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

In this contract dispute, we review the district court's factual findings on the question whether the defendants breached their sales and service agreements with the plaintiff. We affirm.

## I.

The defendant Oakleaf and Associates, Inc. manufactured SX–330 computers. The defendant Reynolds & Reynolds, Co. purchased 1000 of these machines from Oakleaf in March 1979. Three months later, Reynolds sold one of the SX–330's to the plaintiff, Leson Chevrolet Co., Inc., as part of an integrated computer system for the accounting, payroll, finance, and insurance

departments of the automobile dealership. Leson agreed in the contract of sale to sign a separate maintenance agreement with Oakleaf, which it did. Oakleaf had the duty to maintain, service, and program the SX–330 and to train Leson personnel to operate it.

Delivery of the computer was delayed. In the meantime, Leson ordered a second SX–330 from Reynolds in October 1979. Both computers were installed in November 1979. Several months passed before Oakleaf fully programmed both computers. Leson purchased a third SX–330 computer from Reynolds in August 1980. Oakleaf programmed that computer in three days, but Leson criticized this performance as taking too long.

In February 1982, Leson purchased two "MP–16 Up-Grade Kits" directly from Oakleaf. These kits could change two of Leson's SX–330 computers to MP–16 computers, which were faster, performed more functions, and had more storage capacity. The kits and certain parts from two of its SX–330's enabled Leson to have two MP–16 computers at less than half the cost of two new MP–16 units. Leson shipped two of its SX–330's to Puerto Rico, where Oakleaf upgraded the computers. Substitute SX–330's were provided by Oakleaf to Leson during the upgrading process.

The MP–16's were delivered almost two months late to Leson and the programming by Oakleaf was delayed and ineffective. The new computers were never programmed to Leson's satisfaction. Leson demanded that Oakleaf remove the machines, which it refused to do. Leson then purchased other computers from another manufacturer. The Oakleaf machines are now obsolete.

Leson filed suit against Oakleaf and Reynolds in a Louisiana state court. The plaintiff alleged that the three SX–330 computers and the two MP–16 computers never functioned properly, because of inherent defects, and sought rescission of the sales contracts and damages. Oakleaf removed

the suit to the Eastern District of Louisiana on the basis of diversity of citizenship.[1] After a bench trial, the district court found that the SX–330 computers were not inherently defective and that Oakleaf had not breached its contract to program and service the machines. The district court found that the MP–16 units were defective. The court awarded Leson the money it had paid to Oakleaf for the machines and reimbursement of the yearly maintenance fee it had paid in advance. Leson now appeals the court's judgment. Oakleaf cross appeals the partial judgment for Leson.

## II.

### A. Reynolds

■ Reynolds sold to Leson a display screen, a keyboard, external housing, internal electronics, and software for each SX–330 computer. Oakleaf provided the programming for the computers. The district court found that the hardware sold by Reynolds was not defective and that the "calls for hardware maintenance for the three machines were no more than average". Leson cites to this Court no specific instance of hardware malfunction. Except for one vague reference to "constant breakdowns", the plaintiff recites only complaints about programming errors, but Reynolds was not responsible for the programming.

Leson charges that the SX–330's did not have the capacities represented by Reynolds. The plaintiff argues specifically that Reynolds misrepresented the SX–330's credit bureau function and the computer's capacity to integrate with other computer systems. The evidence shows, however, that Leson chose not to integrate the SX–330's with its main computer system and Leson never requested the credit bureau function, which was available.

■ The district court's finding that the SX–330's were not inherently defective is not clearly erroneous. This finding is bol-

---

1. The sales contract between Reynolds and Leson stipulated that the law of Ohio governs their contractual relations. Louisiana law applies to Leson's contract with Oakleaf.

stered by the fact that Leson bought a third unit from Reynolds more than six months after the alleged problems with the first two units developed. The third purchase is inconsistent with the contention that the computers were defective. We conclude that Reynolds did not breach its contract or any implied warranty. Even if the hardware were defective, Reynolds disclaimed in an obvious manner any implied warranties.[2]

B. *Oakleaf*

1. *SX–330.* The SX–330 hardware and software that Oakleaf sold to Reynolds and which Reynolds resold to Leson was not inherently defective. The district court, for the reasons discussed above, was not clearly erroneous in finding that Oakleaf did not breach any implied warranty.

The question whether Oakleaf breached its service contract is more difficult. Leson's real complaint was with Oakleaf's programming and servicing of the machines. The district court concluded that although "Oakleaf's service was not excellent, it was not proved to be poor enough to result in breach of contract". Programming errors occurred with some frequency, but not an unusually large number in the course of an automobile dealer's business. Leson lost no clients as a result of the errors, which were repaired by Oakleaf. The district court was not clearly erroneous in finding that Oakleaf did not breach its service contract.

2. *MP–16.* The upgrading of the two SX–330 computers changed them into completely different machines, called MP–16's. Oakleaf was responsible for any defects in the new machines.[3] Leson complains that the machines were delivered late and were inherently defective.

Oakleaf concedes that it delivered the computers sixty days later than its representative had promised they would be deliv-

ered and that Leson "experienced some sort of problems" with the machines. Oakleaf disputes that the problems were caused by an inherent defect and argues that it was not given enough time to repair the machines.

These arguments are unpersuasive. Leson requested that Oakleaf duplicate the SX–330 program for use on the MP–16's. The evidence showed that there were programming errors in the MP–16 computers Oakleaf delivered. Oakleaf's request for more time was unreasonable. As the district court observed:

> Oakleaf should have been thoroughly familiar with Leson's programming needs for its dealership, and the programming should have been accomplished with dispatch if the computers were free of defects. Leson was justified in rejecting the computers as defective.

III.

We agree with the district court: the SX–330 computers were not defective; the MP–16 machines, however, were defective. The judgment of the district court is therefore AFFIRMED.

---

**2.** The written sales contracts between the parties displayed in a conspicuous way a limitation on remedies that precluded liability for breach of any implied warranty of merchantability. The disclaimer was valid under Ohio law. *See*

*Allis-Chalmers Credit Corp. v. Herbolt,* 17 Ohio App.3d 230, 479 N.E.2d 293 (Ohio App.1984).

**3.** *See* La.Civ.Code art. 2520.