# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 12, 2009

Charles R. Fulbruge III
Clerk

No. 08-20152

FLINT HILLS RESOURCES LP

Plaintiff-Appellant

v.

JAG ENERGY INC

Defendant-Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before GARWOOD, GARZA, and OWEN, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In this contract case, Flint Hills Resources LP ("Flint Hills") appeals from the district court's judgment in favor of JAG Energy Inc. ("JAG"). The district court determined that Flint Hills breached the parties' contract by unreasonably suspending its own performance. For the following reasons, we reverse the district court and render judgment in favor of Flint Hills.

I

This dispute arose from a contract to supply natural gas condensate in south Texas. Flint Hills, a refiner of crude oil products, agreed to purchase "[a]pproximately 1,000 barrels per day" of "Mexican Condensate" from JAG, a broker in such products. The agreement permitted either party to cancel the

arrangement with one month's notice. The contract began without incident in December of 2005. In mid-March of 2006, Flint Hills employee Rhonda Schlatter ("Schlatter") attended a business lunch with Rodrigo Aranda ("Aranda") of PMI Trading ("PMI"). PMI is the marketing arm of Pemex, the Mexican national oil company and the only authorized seller of freshly extracted Mexican condensate. At this lunch meeting, Aranda allegedly told Schlatter that PMI/Pemex had been experiencing thefts of condensate in Mexico and warned that other companies might be selling this stolen condensate in the United States. Aranda did not name JAG or any other specific company as a suspected seller of the stolen condensate.

Schlatter reported this information to her supervisors, and Flint Hills immediately engaged a Washington D.C. law firm and a Mexico City law firm to advise Flint Hills about its rights and obligations. The Mexican law firm confirmed that there was an ongoing investigation into thefts of condensate in Mexico but offered no specific information. The D.C. law firm advised Flint Hills that continuing to purchase condensate from JAG could subject Flint Hills to criminal liability if the product was in fact stolen. Flint Hills did not attempt to contact Aranda or anyone at PMI/Pemex for further investigation.

On March 24, Flint Hills informed JAG that they refused to accept further deliveries due to a legal issue. On March 26, Flint Hills clarified that it was suspending payments until JAG provided title evidence demonstrating that JAG's condensate was purchased from PMI/Pemex at some point downstream. JAG responded by identifying two of its immediate suppliers and promising to forward documents showing that Pemex was "the first link in one of these chains." No such documents were ever produced by JAG. After several more weeks of discussion on this title issue, Flint Hills sent a letter cancelling the agreement on May 16. JAG subsequently brought a contract claim in the district

court, alleging that Flint Hills breached the parties' agreement by withholding payment.

The district court held a bench trial and applied Texas contract law. After considering the evidence and the parties' contract, the court determined that Flint Hills had overreacted to a vague rumor and acted unreasonably in suspending payment. The court also determined that JAG acted reasonably in refusing to provide a chain of title linking the condensate back to Pemex, as it was industry practice to conceal suppliers for competitive reasons. Accordingly, the district court held that Flint Hills had breached the agreement and awarded JAG damages for the period between March 25 and July 1. Flint Hills now appeals this determination of breach.

II

On appeal from a judgment after a bench trial, we review findings of fact for clear error and conclusions of law de novo. Houston Exploration Co. v. Halliburton Energy Servs., Inc., 359 F.3d 777, 779 (5th Cir. 2004). We assume arguendo that the district court's determination that Flint Hills breached the contract constitutes a finding of fact. We have stated that it is "well-settled that whether the parties' conduct constitutes breach presents a pure question of fact . . . ." Concise Oil & Gas P'ship v. La. Interstate Gas Corp., 986 F.2d 1463, 1469 (5th Cir. 1993) (internal quotation marks omitted); see also Leson Chevrolet Co. v. Oakleaf & Associates, Inc. 796 F.2d 76, 79 (5th Cir. 1986) (per curiam) (reviewing the district court's finding of breach under a clearly erroneous standard). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court based on all the evidence is left with the definitive and firm conviction that a mistake has been committed. However, factual findings made under an erroneous view of controlling legal principles are reviewed de novo." Houston Exploration, 359 F.3d at 779 (internal citations and quotation marks omitted).

III

Flint Hills contends that the district court erred in finding that Flint Hills breached the parties' contract by suspending payment based on its general suspicions of theft. In relevant part, the contract provided as follows:

> [Paragraph 5]: In the event of any adverse claim, lien, dispute or lack of information affecting or concerning title to the property or to the crude oil proceeds from lands described in this agreement, Buyer may withhold payment for the crude oil until the claim, lien, dispute or lack of information is settled or resolved, without liability for interest. If requested, Seller agrees to furnish evidence of title satisfactory to Buyer.
>
> ****
>
> [Paragraph 14]: In the event that either party shall default in any payment or other performance under this or any other agreement exiting by and between the parties hereto, . . . [then] the other party, at its option, shall have the right to withhold any payments or any deliveries of crude oil and/or condensate due under this or any other such agreement . . . .

(Emphasis added). The district court interpreted this language to create a limited right to withhold payment—one available where a third-party brings an adverse claim of ownership or where there is objective evidence of bad title.[1] In evaluating Flint Hills decision to withhold payment, the court repeatedly

---

[1] The district court made the following relevant findings of fact and conclusions of law:

> 13. Flint Hills had the opportunity to withhold payment "in the event of any adverse claim, lien, dispute or lack of information affecting" title. At no time, did an adverse claim exist to condensate delivered by JAG to Flint Hills.
>
> 14. Without an adverse claim to the condensate, Flint Hills' non-payment was commercially unreasonable.
>
> ****
>
> 18. Flint Hills breached the contract when it rejected additional condensate on March 24 through July 1. Flint Hills had no commercial basis to reject the condensate. The absence of an adverse claim or plausible factual support for a question of title made Flint Hills' arbitrary quibbling about the sequence of sales categorically unreasonable.

emphasized that Flint Hills had "overreacted" to a vague rumor and inadequately investigated the general allegations of theft. On this basis, the court held that Flint Hills breached the contract by withholding payment.

After a review of the record, we find that the district court committed clear error. The district court's focus on the reasonableness of Flint Hills' own investigation was inconsistent with the contract language. Under the plain terms of the agreement, Flint Hills could suspend payment upon any "dispute or lack of information affecting" title. This right to suspend payment based on a lack of information was not conditioned on the presence of an adverse claim, verifiable proof of theft, or objective evidence of wrongdoing. Furthermore, the contract unconditionally provided that "[i]f requested, [JAG] agrees to furnish evidence of title satisfactory to [Flint Hills]."

Applying these terms to the undisputed facts, we find that Flint Hills did not commit breach: Flint Hills was concerned about the source of JAG's product. Exercising its contractual rights, Flint Hills requested evidence of title tying JAG's condensate back to Pemex and suspended its purchases until this "lack of information" was resolved. JAG was then obligated to provide "satisfactory" evidence of title. After initially promising to do so, JAG ultimately failed to provide any reliable evidence that its condensate was purchased through Pemex at some point downstream.[2] When it became clear that JAG could not or would not provide this requested evidence, Flint Hills cancelled the arrangement. Thus, the "lack of information" regarding title was never resolved. Regardless of whether Flint Hills' initial suspicious were objectively reasonable, its

---

[2] The district court acknowledged that JAG failed to provide this evidence of title but reasoned that it was "industry practice" for a broker to conceal its suppliers. While this may be an accurate observation of the oil-products industry generally, it is not relevant under the contract language. JAG unconditionally agreed to furnish satisfactory evidence of title upon Flint Hills' request.

subsequent conduct was at all times authorized under paragraphs 5 and 14 of the contract.

In sum, the district court erred in concluding that Flint Hills breached the contract. Even if we credit all of the court's factual findings—that Aranda's comment was disingenuous, that Flint Hill's investigation was inadequate, and that Flint Hills overreacted—Flint Hills was nevertheless entitled to request evidence of title and suspend payment until any "lack of information" was resolved to its satisfaction. The district court improperly imposed extra-contractual requirements of commercial reasonableness and verifiable proof on Flint Hills. Thus, the district court committed clear error in determining that Flint Hills breached the contract.[3]

## IV

Viewing the record as a whole, we are convinced that Flint Hills' actions were consistent with its contractual rights. Accordingly, we REVERSE the judgment of the district court and RENDER a take-nothing judgment in favor of Flint Hills.

---

[3] Flint Hills also contends that the district court erred in (1) excluding Flint Hill's expert witness, (2) calculating damages, and (3) finding Flint Hill's suspension of performance unreasonable under the Uniform Commercial Code. Because we find that Flint Hills did not breach the contract, these claims are moot and we do not address them.