# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 12, 2024

Lyle W. Cayce
Clerk

No. 23-20492

Bruce Molzan,

*Plaintiff—Appellant*,

*versus*

Bellagreen Holdings, L.L.C.; Bellagreen Texas, L.L.C.;
Hargett Hunter Capital Partners, L.L.C.; Hargett
Hunter Capital Advisors, L.L.C.; Hargett Hunter
Capital Management, L.L.C.; Jeffrey G. Brock; Jason C.
Morgan; MRC Raleigh; Michael A. Rosado; Joey Carty,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-2578

---

Before Davis, Southwick, and Duncan, *Circuit Judges*.

W. Eugene Davis, *Circuit Judge*.

Plaintiff-Appellant, Bruce Molzan, a celebrated chef in the Houston area, asserted claims against Defendants-Appellees under the Trademark Act of 1946 ("Lanham Act") and Texas law. The district court dismissed all of his claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons set forth below, we AFFIRM in part,

No. 23-20492

REVERSE in part, VACATE in part, and REMAND for further proceedings.

## I.

Molzan filed this action against Bellagreen Holdings, LLC, Bellagreen Texas, LLC, Hargett Hunter Capital Partners, LLC, Hargett Hunter Capital Advisors, LLC, Hargett Hunter Capital Management, LLC, Jeffrey G. Brock, and Jason C. Morgan (collectively "Bellagreen Defendants"), and against MRC Raleigh, Michael A. Rosado, and Joey Carty (collectively "Web Defendants"). In his complaint,[1] Molzan alleged that he has been providing restaurant services for over forty years under various "RUGGLES" trademarks, including federally registered trademarks: RUGGLES®, RUGGLES GREEN®, and RUGGLES BLACK®. He further alleged that consequently "consumers have come to recognize the 'RUGGLES' trademarks and to associate them with restaurant services provided exclusively by [him]."

## A.

In 2008, Molzan and two partners began the first of what would become a group of five Ruggles Green restaurants. Molzan alleged that approximately eight years later in 2016, those partners "forced [a] sale" of the restaurants to one of the Bellagreen Defendants (Hargett Hunter Capital Partners, LLC) and its affiliated companies. The "sale included transfer of a license from [Molzan] allowing use of the RUGGLES GREEN trademark for the name of the restaurants under the same license terms as the selling group had had." Molzan "did **not**, however, sell his RUGGLES GREEN

---

[1] Because Molzan has appealed from a Rule 12(b)(6) dismissal, the facts are recounted as alleged in his operative complaint. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 425 (5th Cir. 2021).

trademark" and "had only *revocably* licensed" it. Molzan also transferred the domain name, rugglesgreen.com, to the Bellagreen Defendants.

Molzan contended that problems began with the Bellagreen Defendants because they misrepresented "that food offered at the restaurants was made from ingredients from local farmers when [they] had discontinued that practice." He threatened to revoke the Ruggles Green trademark license. Thereafter, the Bellagreen Defendants issued a press release stating that they were changing the name of the restaurants from Ruggles Green to Bellagreen.

Molzan objected to the Bellagreen Defendants' continued use of the Ruggles Green trademark after they renamed the restaurants. He contended that they were misusing the trademark by using the domain name, rugglesgreen.com, to redirect people to the Bellagreen Defendants' new website at bellagreen.com. Molzan ultimately revoked the Bellagreen Defendants' license to use the Ruggles Green trademark, and he filed suit against them for trademark infringement in December 2017.

**B.**

In July 2018, the parties settled the lawsuit and executed a Settlement Agreement, a copy of which is attached to Molzan's complaint. Pertinent to the issues in this appeal, the parties agreed that after a period of thirty days following the effective date of the agreement, i.e., until August 7, 2018, the Bellagreen Defendants[2] would cease using the Ruggles Green trademark and its goodwill. Additionally, the agreement required that for those thirty days, the Bellagreen Defendants would "be permitted to continue to use the name 'Ruggles Green®,' for the sole purpose of informing the public of its

---

[2] The Bellagreen Defendants in this case include an additional individual, Jeffrey G. Brock, who was not a party to the Settlement Agreement.

renaming through advertisements or any other media that the Restaurants have been rebranded and renamed from 'Ruggles Green®' to 'Bellagreen.'"

Furthermore, the Bellagreen Defendants agreed that, within seven days of the effective date of the Settlement Agreement, i.e., until July 9, 2018, they would "take all necessary steps under their direction and within their control to not redirect web traffic for the term 'Ruggles®' or 'Ruggles Green®' to the term 'Bellagreen,'" and to return the domain name, rugglesgreen.com, to Molzan. They also agreed to remove all reference to Ruggles Green from their websites. Because of "the difficulty in identifying all such material," the Settlement Agreement provided that if Molzan identified material under the Bellagreen Defendants' control not removed, then he was to notify the Bellagreen Defendants. They would then have "seven (7) days from such notice to take action under their control to remove such material."

## C.

According to the affidavit (attached to Molzan's complaint) of a legal assistant to Molzan's counsel, in February 2020, a year and a half after the Settlement Agreement was executed, the internet was "giv[ing] the impression . . . that the Bellagreen restaurants are the same as the RUGGLES GREEN restaurants, when they are not." For example, a Google search for "Ruggles Green" resulted in Bellagreen restaurants. The search also resulted in Google customer reviews for a purported Ruggles Green restaurant which was in actuality a Bellagreen restaurant and map directions to that restaurant. In trying to determine what was causing searches to associate Ruggles Green with Bellagreen, the legal assistant discovered that

an "unknown party" had acquired the rugglesgreen.com domain name[3] and used it to support a subdomain, rugglesgreen.wpengine.com, in the HTML source code on the bellagreen.com website. A link in that source code redirected to a webpage with a Bellagreen logo. And, when typing the subdomain, rugglesgreen.wpengine.com, directly into the internet search bar, the legal assistant was immediately redirected to bellagreen.com, the website for the Bellagreen restaurants.

In order to recover the rugglesgreen.com domain name from the "unknown party," Molzan initiated a proceeding under the Uniform Domain-Name Dispute-Resolution Policy ("UDRP"), a private, binding arbitration proceeding to resolve domain name disputes. The panel judging the proceedings confirmed that the subdomain, rugglesgreen.wpengine.com, redirected internet users to a competing restaurant (Bellagreen) and that the subdomain was maintained via the disputed domain name, rugglesgreen.com. The panel further determined that the "unknown party"[4] had registered and used the rugglesgreen.com domain name in "bad faith." Specifically, it inferred from Molzan's evidence that the "unknown party" had "actual knowledge of [Molzan's] rights in the mark prior to registering the disputed domain name," which "adequately demonstrated bad faith." The panel ordered return of the rugglesgreen.com domain name back to Molzan. Molzan alleged that, "[o]n information and belief, common sense, and *res ipsa loquitur*," the "unknown party" was affiliated in some way with the Bellagreen Defendants and/or the Web Defendants.

---

[3] Unfortunately for Molzan, he inadvertently failed to renew his registration of the domain name when it came up for renewal.

[4] The unknown party continued to hide its true identity by "falsely identifying itself as a famous musician, Mitar Miric in the Republic of Serbia, and providing a fictitious address taken from words from one of that musician's songs."

**D.**

Although Molzan recovered the rugglesgreen.com domain name in the beginning of 2020, he was unable to substantially reduce the internet association of the Bellagreen restaurants with him or his Ruggles Green trademark. Furthermore, during 2020, Molzan's counsel discovered that the website of Bellagreen Defendants, Hargett Hunter Capital Partners, LLC, Hargett Hunter Capital Advisors, LLC, and Hargett Hunter Capital Management, LLC, made references to Ruggles Green and included a picture of a restaurant bearing a Ruggles Green sign, in violation of the terms of the Settlement Agreement requiring them to cease making such references after August 7, 2018.

In December 2020, Molzan's counsel wrote to the Bellagreen Defendants asserting that they had breached the Settlement Agreement and were infringing the Ruggles and Ruggles Green trademarks. In response, the Bellagreen Defendants stated that references to Ruggles Green and the picture of a Ruggles Green sign were "oversights" and corrected the websites to delete any reference to Ruggles Green. They further disputed that they were causing internet searches for Ruggles or Ruggles Green to show results for Bellagreen restaurants, contending that those results were controlled by the various internet search engines.

Although the Bellagreen Defendants deleted references to Ruggles Green from their websites, the "knowledge panels" for Bellagreen continued to cause confusion in Google searches and Google Map searches for Ruggles, Ruggles Green, and Ruggles Black in 2021. Molzan continuously complained to Google that internet searches for Ruggles Green resulted in Bellagreen appearing before or to the exclusion of Ruggles Green, along with knowledge panels for Bellagreen. Those complaints eventually led to Google "changing the knowledge panels to a Ruggles Green panel indicating that the Ruggles

Green restaurants were closed.  However in less [than] 24 hours of the appearance of such correct Ruggles Green knowledge panel, the panel was removed and replaced with the Bellagreen Holdings and Bellagreen knowledge panels again."

Consequently, Molzan wrote to the Bellagreen Defendants, informing them of what happened with the knowledge panels.  In response, they took "no position" because they did not know how the panels were being generated or changed and suggested Molzan go back to Google.  Molzan disagrees and alleges that "[o]n information and belief from Google information, . . . the confusing Bellagreen knowledge panels were claimed by or on behalf of a Bellagreen Defendant and/or a Web Defendant on behalf of the Bellagreen Defendants and the Defendants were and are responsible for the content and the consequences of that content on the Google search engine."

As late as March 2022, a Google search for Ruggles Green still showed a Bellagreen knowledge panel.  Searches for Ruggles Green on Google Maps results in a paid ad for a Ruggles Black restaurant between two results for different Bellagreen restaurants on the first page.  A search for Ruggles Green on Apple Maps results in only two results, both of which are Bellagreen restaurants.

Furthermore, a search on Houston First Corporation's website (visithoustontexas.com) for Ruggles resulted in the first five of six results being for the five Bellagreen restaurants in Houston.  Molzan contends that information about the website indicates that search results showing Bellagreen would be listed only with the approval and direction of the owners of the Bellagreen restaurants.  Furthermore, Houston First Corporation "would not prepare such results as those showing Bellagreen restaurants for

a search for Ruggles or Ruggles Green or Bellagreen and post them except at the request of the owner of the Bellagreen restaurants."

## E.

As of October 2022, the Bellagreen Defendants' website stated on its homepage that meals are "chef inspired," and that "since 2008," which was the year Molzan founded the Ruggles Green restaurants, "our restaurants have offered our guests an amazing meal . . . ." It also stated, "We have a new name, bellagreen. Our high quality food hasn't changed . . . ." Molzan contends that the Bellagreen and Web Defendants have designed the Bellagreen website to mislead the public into thinking that the Bellagreen restaurants are the Ruggles Green restaurants except with a "new name."

Molzan contends that the confusion in the public is evidenced by Google, Trip Advisor, and Yelp reviews of Bellagreen restaurants. Those reviews indicate that customers still think Ruggles Green is affiliated with Bellagreen, and the responses from Bellagreen to those reviews appear to meld Ruggles Green with Bellagreen.

## F.

Based on the foregoing allegations, Molzan filed a complaint against the Bellagreen and Web Defendants alleging claims of federal and state trademark infringement, false advertising, unfair competition, trademark dilution, breach of the Settlement Agreement, and unjust enrichment. In response, the Bellagreen Defendants filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim. The Web Defendants also filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim and under Rule 12(b)(2) for lack of personal jurisdiction. Molzan opposed the motions and also sought leave to file a second amended complaint. The district court granted the Rule 12(b)(6) motions, denied Molzan leave to file his second

No. 23-20492

amended complaint, and did not rule on the Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.  Molzan filed a timely notice of appeal.

## II.

This Court reviews *de novo* a district court's judgment dismissing an action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[5]  Under this standard, the Court must "accept all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving party."[6]  To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[7]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8]  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[9]  "We generally confine our analysis to the complaint and its proper attachments . . . ."[10]

## A.

To plead a claim for trademark infringement,[11] Molzan was required to allege that "(1) [he] possesses a legally protectable trademark, and

---

[5] *Jim S. Adler, P.C.*, 10 F.4th at 426 (citation omitted).

[6] *Id.* (citation omitted).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Id.* at 679.

[10] *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (citation omitted).

[11] The Lanham Act creates a cause of action for infringement of registered marks (15 U.S.C. § 1114(1)) and for infringement of unregistered marks (15 U.S.C. § 1125(a)), and the same elements apply to both causes of action.  *Jim S. Adler, P.C.*, 10 F.4th at 426 (citation omitted).  Additionally, trademark infringement under Texas common law is the

(2) Defendants' use of this trademark 'creates a likelihood of confusion as to source, affiliation, or sponsorship.'"[12]  There is no dispute that Molzan possesses legally protectable trademarks in Ruggles and Ruggles Green. Furthermore, as a "former licensee" of Ruggles and Ruggles Green, "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion.'"[13]  The district court, however, determined that Molzan failed to survive the Bellagreen Defendants' 12(b)(6) motion because it found "conclusory" Molzan's allegations that the "***Bellagreen Defendants' use*** of Ruggles Trademarks [] is creating the confusion."  (emphasis added). Specifically, the district court determined that Molzan did not allege any facts "explain[ing] why the Bellagreen Defendants would have any connection to any of the third-party websites or their users."  As Molzan points out, however, his complaint alleged the following:

- In February 2020, a subdomain **on Bellagreen's website** was supported by the rugglesgeen.com domain name. When typing the subdomain directly into the internet search bar, the user was immediately redirected to bellagreen.com, the website for the Bellagreen restaurants.

- The UDRP panel concluded that the "unknown party" who had registered and used the rugglesgreen.com domain name (which supported the subdomain name on Bellagreen's website) did so in "bad faith."

---

same as under the Lanham Act.  *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) (citation omitted).

[12] *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 616 (5th Cir. 2023) (citation omitted).

[13] *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 464 (6th Cir. 2022) (citing, *inter alia*, *Pro. Golfers Ass'n of Am. v. Bankers Life & Cas.Co.*, 514 F.2d 665, 670 (5th Cir. 1975)).

- The website of Defendants Hargett Hunter Capital Partners, LLC, Hargett Hunter Capital Advisors, LLC, and Hargett Hunter Capital Management, LLC, made references to Ruggles Green and included a picture of a restaurant bearing a "Ruggles Green" sign.

- In June 2021, after Molzan continuously complained to Google that searches for Ruggles Green resulted in Bellagreen appearing first or to the exclusion of Ruggles Green, Google changed the knowledge panels. But, less than twenty-four hours later, those panels were removed and replaced with Bellagreen Holdings and Bellagreen knowledge panels.

- Searches on Houston First Corporation's website for Ruggles resulted in the first five of six results being for the five Bellagreen restaurants. Houston First Corporation indicated that search results showing Bellagreen would be listed only with the approval and direction of the owners of the Bellagreen restaurants.

- Google, Trip Advisor, and Yelp reviews of Bellagreen restaurants indicate that customers think they are affiliated with Ruggles Green, and Bellagreen's responses to the reviews on those websites meld Ruggles Green with Bellagreen.

Contrary to the district court's determination, the above allegations are not conclusory; rather, they establish the facial plausibility of Molzan's trademark infringement claims. Given that the subdomain on the Bellagreen restaurant website was supported by the rugglesgreen.com domain name, and that subdomain redirected to the Bellagreen restaurant website, it is facially plausible that the Bellagreen Defendants were using the Ruggles and Ruggles Green trademarks and that use was creating confusion on the internet.

Other factual allegations also made facially plausible that the Bellagreen Defendants were using the Ruggles Green trademark to cause confusion on the internet. Google and Houston First Corporation both indicated that Bellagreen was responsible for the information placed on their websites. And, after Google actually removed knowledge panels for Bellagreen and replaced them with Ruggles Green panels, less than twenty-four hours later, those panels were replaced again with Bellagreen panels. Furthermore, online customer reviews on Google, Trip Advisor, and Yelp show that responses by Bellagreen blurred the lines between it and Ruggles Green.

Because Molzan's complaint contained "well-pleaded factual allegations," the district court "should [have] assume[d] their veracity and then determine[d] whether they plausibly g[a]ve rise to an entitlement to relief."[14] Instead, as Molzan argues, the district court erroneously assumed the veracity of Defendants' assertions in their motion to dismiss over the well-pleaded factual allegations in Molzan's complaint.

Additionally, the district court determined, as to any references to Ruggles Green on Defendants' websites, that the Settlement Agreement applied and, in effect, supplanted any claims of trademark infringement in the future. Specifically, the district court noted Molzan's allegations that the Bellagreen Defendants repeatedly refer to Bellagreen as "formerly Ruggles Green" and display pictures of restaurants with "Ruggles Green" signage on webpages, press releases, and advertisements without Molzan's permission. The district court concluded, however, that "the parties created a remedy for these types of transgressions in the Settlement Agreement. Upon [Molzan's] identification of potentially infringing online material referencing

---

[14] *Iqbal*, 556 U.S. at 679.

'Ruggles Green,' the Bellagreen Defendants are to remove said material, to the extent it is under their control, within 7 days."

As Molzan points out, however, the contract does not address new infringements committed after the effective date of the Settlement Agreement. The Settlement Agreement states that the parties were releasing each other from liability for any claims "that they now have or could have had against [each other] in the State or Federal Litigation." Moreover, the provision the district court relied on in the Settlement Agreement, allowing Molzan to notify Bellagreen if he identified material referencing Ruggles Green under Bellagreen's control and giving Bellagreen seven days to remove it, applied to all references to Ruggles Green existing at the time of the Settlement Agreement, as those references were to be removed "as part of the renaming" of the restaurants. It would not make sense for this provision to apply ad infinitum because that would allow Bellagreen repeatedly to infringe on the Ruggles Green mark until notified by Ruggles Green, at which time Bellagreen would have to remove it.

Based on the foregoing, we reverse the district court's Rule 12(b)(6) dismissal of Molzan's federal and state trademark infringement claims.

## B.

Section 43 of the Lanham Act also provides a cause of action for false designation of origin, false descriptions, and unfair competition.[15] These claims impose liability on "[a]ny person who . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another

---

[15] 15 U.S.C. § 1125 (a)(1)(A)-(B).

person's goods, services, or commercial activities."[16] To succeed on a claim of false advertising, a plaintiff must show:

> (1) A false or misleading statement of fact about a product; (2) Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers; (3) The deception was material, in that it is likely to influence the consumer's purchasing decision; (4) The product is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue.[17]

Consistent with its analysis of the trademark infringement claims, the district court determined that "the only alleged potentially false or misleading statements regarding Ruggles Green were not made by the Bellagreen Defendants, but by unaffiliated users on third-party websites." For the reasons set forth above, the district court erred in determining that the complaint did not contain well-pleaded factual allegations making it facially plausible that the Bellagreen Defendants made false and misleading statements about Ruggles Green. Additionally, as of October 2022, the Bellagreen Defendants' website stated that "since 2008," which was the year Molzan founded the Ruggles Green restaurants, "our restaurants have offered our guests an amazing meal . . . ." It also stated, "We have a new name, bellagreen. Our high quality food hasn't changed . . . ." The district court did not address these statements, only determining that the website's mention of Ruggles Green to explain that Bellagreen was "formerly Ruggles Green" was not false or misleading.

_____

[16] *Id.*

[17] *IQ Prod. Co. v. Pennzoil Prod. Co.*, 305 F.3d 368, 375 (5th Cir. 2002) (citation omitted). Unfair competition analysis under federal law is the same for claims under Texas common law. *See Amazing Spaces, Inc.*, 608 F.3d at 235 n.7.

As Molzan argues, these statements have the potential of leading customers into believing that Bellagreen is still affiliated with Ruggles Green and Molzan. That customers are confused is confirmed by the reviews of Bellagreen on Google, Trip Advisor, and Yelp. The reviews show that customers think Bellagreen is affiliated with Ruggles Green, and Bellagreen's responses to the reviews on those websites appear to meld Ruggles Green with Bellagreen.

Based on the foregoing, we reverse the district court's Rule 12(b)(6) dismissal of Molzan's federal and state false advertising and unfair competition claims.

## C.

Molzan also brings claims for trademark dilution under both federal and state law. The district court dismissed these claims on the basis that Molzan's trademarks are not "famous." On appeal, Molzan "admits that his Ruggles marks for restaurant services do not have the national 'fame'" required for the purposes of a federal dilution claim.[18] However, Molzan asserts that "at the very least," he has alleged sufficient facts for "fame" of his "Ruggles mark in the greater Houston metropolitan area under Texas law." We agree.

The elements of trademark dilution under Texas law are similar to those required under a federal dilution claim, but the geographic scope is smaller. Under Texas law, "the owner of a mark that is famous and distinctive . . . in this state is entitled to enjoin another person's commercial use of a mark . . . if use of the mark . . . is likely to cause the dilution of the

---

[18] *See* 15 U.S.C. § 1125 (c)(2)(a) ("[A] mark is famous if it is widely recognized by the general consuming public of the United States").

famous mark."[19] "[A] mark is considered to be famous if the mark is widely recognized by the public throughout this state or in a geographic area in this state as a designation of source of the goods or services of the mark's owner."[20]

In determining whether a mark is famous, a court may consider the following factors: (1) the duration, extent, and geographic reach of the advertisement and publicity of the mark, (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark, (3) the extent of actual recognition of the mark in Texas, and (4) whether the mark is registered in Texas or with the U.S. Patent and Trademark Office.[21]

Molzan's allegations that he has cooked thousands of meals, that he once appeared on a box of rice, that Ruggles Black was listed as a top restaurant for foodies, that his restaurants have been open since the early 1980s, and he has had an "extensive, continuous, and long-standing use and promotion of the Ruggles mark in Houston" make it facially plausible that Molzan's Ruggles mark is famous in the Houston area. Therefore, we affirm the district court's Rule 12(b)(6) dismissal of Molzan's federal trademark dilution claim, but we reverse the dismissal of Molzan's state trademark dilution claim.

## D.

Molzan also argues that the district court erred in dismissing his breach of contract and unjust enrichment claims under Texas law. He asserts that the Bellagreen Defendants breached the Settlement Agreement in

---

[19] Tex. Bus. & Com. Code § 16.103(a).

[20] *Id.* § 16.103(b).

[21] *Id.*

numerous ways: (1) the use of the word "our" on the Bellagreen website, implying that the restaurant is associated with Molzan, (2) Bellagreen's ongoing statement in advertising on First Houston Corporation's website that Bellagreen is "rebranded from former Ruggles Green," and (3) Bellagreen's use of the Ruggles Green subdomain to direct web traffic to a Bellagreen website.

"A breach occurs when a party fails to perform a duty required by the contract."[22] For the reasons set forth above, Molzan's complaint contains well-pleaded allegations that the Bellagreen Defendants breached the Settlement Agreement. Examples include allegations of Bellagreen's directing of web traffic in search of Ruggles Green to a Bellagreen website. Additionally, Bellagreen agreed not to refer to Ruggles Green, but allegedly its advertising on the First Houston Corporation's website did so. Therefore, we reverse the district court's Rule 12(b)(6) dismissal of Molzan's breach of contract claims and remand for further proceedings.

To adequately plead an unjust enrichment claim, Molzan must allege that: (1) valuable services were rendered or materials furnished; (2) those services were for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged.[23] Further, a party cannot recover on an unjust enrichment claim when there is a valid contract which governs the "services or materials furnished."[24]

---

[22] *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App.—Dallas 1992, writ denied).

[23] *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732–33 (Tex. 2018).

[24] *Id.* at 733.

Molzan argues that the district court incorrectly interpreted his unjust enrichment claim as only pertaining to a breach of the Settlement Agreement, when in fact he also pleaded "unjust enrichment as based on underlying infringement and unfair competition claims." Molzan acknowledges that he cannot assert an unjust enrichment claim based on the Settlement Agreement, but he argues that he has properly pled unjust enrichment based on his underlying trademark infringement and unfair competition claims. The plausible allegations in Molzan's complaint support Molzan's argument. Molzan alleges that the Bellagreen Defendants "wrongfully used" the Ruggles trademarks in competition with him and "have gained and are gaining a wrongful benefit by undue advantage," that the Bellagreen Defendants "have not been burdened with the expenses incurred by [Molzan]," and that they are obtaining benefits from Molzan's efforts and expenses for Bellagreen Defendants' own business.

The district court dismissed Molzan's unjust enrichment claim because it had dismissed his underlying trademark infringement and unfair competition claims. Because, as described above, Molzan's underlying claims survive a Rule 12(b)(6) challenge, the district court erred in dismissing the unjust enrichment claim. Therefore, we reverse the district court's Rule 12(b)(6) dismissal of Molzan's unjust enrichment claim and remand for further proceedings.

## III.

As stated above, the district court did not rule on the Web Defendants' motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.[25] It dismissed the claims against the Web Defendants for failure

---

[25] The Web Defendants include MRC Raleigh, Michael A. Rosado, and Joey Carty. They are collectively referred to as such because Molzan alleges that they are involved in

to state a claim under Rule 12(b)(6), determining that Molzan's allegations against them were "conclusory" and "lack[ed] specificity." The Web Defendants argue that the district court's Rule 12(b)(6) dismissal was correct, and they additionally argue that the district court's dismissal could also be affirmed for lack of personal jurisdiction under Rule 12(b)(2).

Under well-established precedent, "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."[26] Absent such jurisdiction, "the court cannot proceed at all in any cause."[27]

Because the district court erred in ruling on the merits of Molzan's claims against the Web Defendants prior to ruling on personal jurisdiction, we vacate the district court's Rule 12(b)(6) dismissal of the Web Defendants. Furthermore, because of the fact-intensive nature of personal jurisdiction, the district court should consider the Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction in the first instance after remand.[28]

## IV.

The district court denied Molzan leave to file a second amended complaint to add a claim that the Bellagreen Defendants fraudulently induced him into executing the Settlement Agreement. The district court

---

designing and developing the websites for the Bellagreen Defendants and in their promotion on the internet.

[26] *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93–102 (1998)).

[27] *Id.* at 431 (citation omitted).

[28] If the district court determines that it has personal jurisdiction over the Web Defendants, it should then reconsider their Rule 12(b)(6) motion.

denied him leave because the amendment was "futile" and would create "undue delay."

"Where a district court denies leave to amend on the basis of futility," this Court "review[s] that decision *de novo*."[29] Because almost all of Molzan's claims do not fail under Rule 12(b)(6), and the case is still in its initial stages, we vacate the district court's order denying leave to amend. Molzan may decide whether to reassert his motion for leave to amend after remand, and the district court may reconsider the motion at that time.[30]

## V.

Based on the foregoing, we AFFIRM in part, REVERSE in part, VACATE in part the district court's judgment, and REMAND this matter for further proceedings consistent with this opinion.

---

[29] *Jim S. Adler, P.C.*, 10 F.4th at 430 (citation omitted).

[30] *See id.*