# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 14, 2025

Lyle W. Cayce
Clerk

No. 24-10204

UNIWELL LABORATORIES L.L.C.,

*Plaintiff—Appellant*,

*versus*

FRAIN INDUSTRIES INCORPORATED; FRAIN GROUP
INCORPORATED; REF LEASING COMPANY,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CV-1292

_____

Before WIENER, WILLETT, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

This appeal stems from a two-day bench trial on breach-of-contract allegations. Plaintiff-Appellant UniWell Laboratories, LLC ("UniWell") appeals the district court's judgment in favor of Defendants-Appellees Frain Industries, Inc., The Frain Group, Inc., and REF Leasing Company (collectively, "Frain"). Our previous per curiam opinion determined that,

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

before we could reach the merits, a limited remand was necessary to resolve the threshold jurisdictional question of diversity of citizenship. The district court has now confirmed diversity, so we are satisfied that we have jurisdiction over this case. Proceeding to the merits of the matter, we AFFIRM.

In March 2021, UniWell and Frain negotiated the terms of a contract under which Frain would refurbish, configure, and crate packaging machinery for delivery at Frain's Illinois facility. The machinery was a two-ounce rotary line filler, consisting of nine machines that UniWell planned to use to bottle hand sanitizer.

On or about March 16, 2021, UniWell placed an oral purchase order for the machinery and requested to finance the order. Frain sent UniWell Invoice 722805-3[1] (the "Invoice") via email reflecting the order, which stated that the machines were subject to a 31-month lease starting on July 1, 2021. The Invoice further explained that the payment schedule would consist of 30 monthly payments of $38,000 and a thirty-first payment of $16,357. It also provided UniWell with a $1.00 buyout at the end of the lease. Other payment terms included in the Invoice stated that $100,000 was due with the order, another $100,000 was due in 30 days, and $111,253 was due in 60 days "prior to shipment." Below this schedule, the Invoice further stated that "[l]ead time is 10 weeks from receipt of deposit payment, signed lease agreement[,] and testing materials."

By the end of March, the parties signed a Project Confirmation Letter ("PCL"), which outlined the terms of the transaction. On both March 30th

---

[1] Even though Frain sent several invoices to UniWell, we reference this one because it is the one to which the parties stipulated in their joint pretrial order. Additionally, the salient language that we refer to in Invoice 722805-3 is identical to the language contained in the other invoices.

and 31st, Frain emailed UniWell a copy of the lease agreement, which was consistent with the terms stated in the Invoice. Frain received no response from UniWell regarding the lease agreement on either date.[2] UniWell did send Frain the three required payments in March, April, and May, plus a payment of $11,253 for crating costs, and Frain accepted these payments.

A major milestone of the PCL was the Factory Acceptance Testing, ("FAT"). The purpose of the FAT was to ensure that the machinery met the requirements of UniWell's intended use. The PCL set June 1, 2021, as the estimated FAT date and stated that "a delay will occur if product samples and test materials are not received" by that date. In mid-May, Frain notified UniWell that the FAT date would be delayed because Frain was missing certain components necessary for testing. UniWell asked Frain whether it would receive a discount on the price of the machinery or any other concession because of the delay. Frain responded by saying that it "w[ould] not entertain any concessions" but did provide UniWell with the option to cancel the project. UniWell did not cancel the project and Frain informed UniWell that the delayed FAT would take place on June 29, 2021. When Frain met that deadline, UniWell accepted and signed off on the FAT Confirmation for eight of the nine machines. The ninth machine had issues and was not part of the June 29 FAT. Those issues were resolved shortly and UniWell approved the ninth machine less than ten days later.

In July, the parties interacted in the following ways: (1) At least four follow up emails were sent to UniWell requesting that it sign the lease agreement; (2) UniWell paid Frain $8,720 for startup and training costs; and (3) Frain notified UniWell that the machinery would be available for pick up

---

[2] At trial, Mr. Soto of UniWell testified that he did not find these emails, which were located in his junk folder, until mediation of the case had already started.

No. 24-10204

on July 13, 2021. Although UniWell acknowledged receipt of the emails, it did not sign the lease agreement. On July 13, the machinery was placed on Frain's dock for pick up.

UniWell and Frain then talked on the phone, during which UniWell expressed its desire to renegotiate the lease because of the FAT delay and the effects the delay had on UniWell's business. Thereafter, Frain and UniWell exchanged proposals to modify the lease agreement and counterproposals that renegotiated certain terms, which each side rejected. In its rejection email, Frain explained that it would "only offer a cash sale option for UniWell to move forward" and that UniWell must sign a "Covenant Not to Sue" before proceeding any further.[3] On August 6, 2021, Frain sent another email to UniWell which reflected a cash purchase price for the machines in the amount of $1,075,000. On August 19, UniWell sent Frain a formal written notice of the termination of their contractual agreement and demanded return of all its payments.

UniWell subsequently sued Frain in connection with this transaction. UniWell originally filed its petition in state court, but Frain timely removed the case to the United States District Court for the Southern District of Texas. UniWell's petition alleged "breach of contract, fraud, and other fraud-related claims" against Frain and sought "the return of the price paid

_____

[3] The email specifically stated:

Based on all the facts and maintenance this account will be for Frain to manage and with the concern of Uniwell being a flight risk of your financial obligation, Frain will only offer a cash sale option for Uniwell to move forward (No Financing option will be provided). In addition, your statement made on your call with [Frain Executives] where you "reserved your right to sue" and confirmed "you intend to sue", I have included a Covenant Not to Sue which will need to be executed prior to any proceeding of the above-mentioned offer.

to Frain, the recovery of its reasonable and necessary attorneys' fees, and the time value of money or fair market interest." Frain brought a breach-of-contract counterclaim and, alternatively, equitable claims of promissory estoppel and quantum meruit against UniWell.

Through consent of the parties, a magistrate judge held a two-day bench trial. Of relevance, the court found UniWell liable for breaching the Invoice and PCL and awarded Frain nominal damages. UniWell timely appealed. [4]

In reaching its decision, the court first concluded that the contract was governed by Article II of the Uniform Commercial Code, which Texas has adopted into its state law. Although not expressly stated in the contract, the court ruled that "time was of the essence" based on the parties' communications prior to finalizing the transaction, emphasizing the expedited nature of UniWell's needs. The district court then determined that Frain breached the "time is of the essence" requirement when it failed to have the machinery ready for the originally scheduled FAT of June 1, 2021, as a result of Frain's failure to have all the necessary components to complete the testing. Because such a breach is material, the court noted that UniWell could have either (1) discontinued its own performance, rescinded the contract, and sued for material breach, or (2) continued performing and thereby waive Frain's alleged material breach. The court determined that UniWell waived Frain's breach and listed seven ways that UniWell continued its own performance after June 1.[5] The district court ultimately

_____

[4] Because UniWell only appealed the district court's decision regarding the breach-of-contract claims, we need not address other claims between the parties.

[5] Those include: (1) UniWell's continuance with the project after Frain gave UniWell the option to cancel the deal in early June; (2) UniWell sending the second round of testing materials after June 1; (3) Riess's June 8 email to Frain, which stated that "Frain must finish the line[;]" (4) UniWell accepting the FAT on June 29, 2021; (5) UniWell's

held that Frain fulfilled its obligations when it placed the machinery on its dock for pickup on July 13, and that UniWell breached the PCL and the Invoice when it failed to sign the lease agreement and demanded the return of all its payments to Frain.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*." *One Beacon Ins. Co. v. Crowley Marine Servs. Inc.*, 648 F.3d 258, 262 (5th Cir. 2011). A finding is "clearly erroneous" if "the reviewing court based on all the evidence is left with the definitive and firm conviction that a mistake has been committed." *Flint Hills Resources LP v. Jag Energy, Inc.*, 559 F.3d 373, 375 (5th Cir. 2009). We may not reverse the district court's findings if its "account of the evidence is plausible in light of the record viewed in its entirety[.]" *Ruiz v. Medina*, 980 F.2d 1037, 1038 (5th Cir. 1993) (internal quotation omitted). "Where there are two permissible views of evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

This appeal hinges on which documents comprise the binding contract between UniWell and Frain. UniWell contends that Frain breached the original 31-month lease agreement when it refused to lease the machinery and instead would only offer a cash sale. Frain claims that there was never a binding lease agreement and that UniWell breached the PCL and the Invoice when it cancelled the transaction and refused to sign any lease agreement between the parties.

---

July actions to make arrangements to pick up the machinery; (6) UniWell's July approval of the ninth machine; and (7) UniWell's July payment to Frain for startup and training costs.

No. 24-10204

We agree with the court below. The parties do not dispute that the Invoice and PCL constitute a valid and enforceable contract between them. It is further undisputed that the Invoice required deposit payments from UniWell, a signed lease agreement, and testing materials from UniWell. Accordingly, UniWell's entire breach-of-contract claim against Frain, predicated on the lease agreement, fails because UniWell did not sign any lease agreement. There was thus no enforceable lease agreement between the parties. UniWell, on the other hand, breached the PCL when it failed to sign any lease agreement and then terminated the PCL. *See Molzan v. Bellagreen Holdings, L.L.C.*, 112 F.4th 323, 335 (5th Cir. 2024) ("A breach occurs when a party fails to perform a duty by the contract."). As the breaching party, UniWell is not entitled to a return of any of the payments it made to Frain. Tex. Bus. & Com. Code. § 2.703. The district court committed no mistake or clear error, so its judgment is AFFIRMED.